UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph Samuel KINSEY,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Albert KINSEY, Defendant–Appellant.

Nos. 87–1182, 87–1183.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1988.

Decided April 1, 1988.

Charles M. Bonneau, Sacramento, Cal., for defendant-appellant Joseph Kinsey.

Jesse S. Kaplan, Sacramento, Cal., for defendant-appellant Albert Kinsey.

William J. Portanova, Sp. Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before NOONAN and THOMPSON, Circuit Judges, and TEVRIZIAN *, District Judge.

TEVRIZIAN, District Judge:

The District Court found appellants Joseph Samuel Kinsey and Albert Kinsey guilty of both conspiracy to distribute and possession with intent to distribute cocaine. Joseph and Albert Kinsey now raise numerous arguments on appeal. First, Joseph Kinsey contends that the District Court improperly admitted the expert opinion testimony of a narcotics officer regarding his, Joseph Kinsey's, involvement in the distribution of the cocaine. Second, Albert Kinsey contends that the warrantless arrest of Joseph Kinsey was not justified by exigent circumstances. Third, Joseph and Albert Kinsey contend that the District Court improperly denied them their right to a jury trial on the validity of their alleged prior narcotics trafficking convictions. Fourth, Joseph and Albert Kinsey contend that the mandatory minimum penalty provisions of Title 21 U.S.C. Section 841(b)(1)(A) are unconstitutional as applied to them. We disagree with the foregoing contentions and we conclude there are no grounds which warrant reversal of Joseph and Albert Kinsey's convictions. Accordingly we affirm.

* The Honorable Dickran Tevrizian, United States Judge, Central District of California, sitting by designation.

## FACTUAL BACKGROUND

On December 28, 1986, at approximately 3:45 a.m., a Sacramento police officer stopped a vehicle after he observed the vehicle moving erratically. The officer recognized the driver of the vehicle as a state parolee by the name of Leon Williams ("Williams"). The passenger in the vehicle identified himself as John Wayne Porter ("Porter"). The officer allowed both Williams and Porter to leave after he conducted an authorized search of Williams and the vehicle. During the search the assisting officer had, however, discovered approximately 100 feet from the vehicle, a leather pouch containing one ounce of suspected base or "rock" cocaine, a rental receipt for a Motel 6 room dated December 27, 1986 in the name of John Wayne Porter, and a key. The officers thereafter arrested Williams and Porter when they returned to retrieve the pouch approximately forty-five minutes later.

During the booking procedure an officer discovered four photographs in the lining of Porter's jacket, two of which depicted Porter holding weapons, including an automatic Thompson style submachine gun. The Sacramento police narcotics detail organized a SWAT team to go to the Motel 6 and proceeded to obtain a search warrant for the motel room. At approximately 10:00 a.m. on December 28, 1986, the members of the SWAT team observed a female occupant looking out Porter's motel room window. At that point they entered Porter's room. Joseph Kinsey and a young woman, later identified as Sedilia Thomas, were the only persons in the motel room. At the time of entry Joseph Kinsey was in the process of dividing large chunks of "rock" cocaine with a razor blade. Albert Kinsey was not present in the room. Although the officers arrested both Joseph Kinsey and Sedilia Thomas they "froze", or sealed off, the scene, and did not search the room until approximately 1:00 p.m. when they were advised that a search warrant had been issued. The subsequent search of the room led to the seizure of several ounces of "rock" cocaine, $6,000.00 in cash, narcotics sales paraphernalia, and a telephone pager.

On December 29, 1986, Sacramento Narcotics Detective Daniel Torres ("Detective Torres") received a phone call from a James Covert ("Covert"). Covert identified himself as Joseph Kinsey's driver and offered to work for the police as a paid informant. Covert thereafter informed the police that Joseph Kinsey's father, Albert Kinsey, had continued the cocaine trafficking operation while his son, Joseph Kinsey, was in prison. On January 7, 1987, Joseph Kinsey was released from prison. On January 11, 1987, Covert informed Detective Torres that Joseph and Albert Kinsey had instructed Covert to pick them up at the Sacramento airport that day as they were arriving on a flight from Los Angeles.

The police pre-arranged for Covert to signal from the vehicle he was driving if Covert discovered that Joseph and Albert Kinsey were transporting cocaine from Los Angeles. When Covert gave the pre-arranged signal numerous marked and unmarked law enforcement vehicles stopped Covert's vehicle. After the occupants exited the vehicle the officers discovered approximately 12 ounces of "rock" cocaine and two shredded airline tickets on the floorboard directly below the seat which Albert Kinsey had occupied. The police arrested Joseph and Albert Kinsey.

On February 6, 1987, the Grand Jury for the Eastern District of California charged Joseph Kinsey, Albert Kinsey and Porter in Count 1 of the Indictment with violation of Title 21 U.S.C. Section 841(a)(1), 846—Conspiracy to Distribute Cocaine Base. Count Two of the Indictment charged Porter with violation of Title 21 U.S.C. Section 841(a)(1) —Possession with Intent to Distribute Cocaine Base on December 28, 1986. Count Three of the Indictment charged Joseph Kinsey with violation of Title 21 U.S.C. Section 841(a)(1)—Possession with Intent to Distribute Cocaine Base on December 28, 1986. Count Four charged Joseph and Albert Kinsey with violation of Title 21 U.S.C. Section 841(a)(1)—Possession with Intent to Distribute Cocaine Base on January 11, 1987.

On March 4, 1987, Porter entered a guilty plea to Count Two of the Indictment and on April 15, 1987, Porter was sentenced to eight years in prison with a ten-year special parole term. April 1, 1987, the government filed an Information in the within case against Joseph and Albert Kinsey charging prior felony narcotics offenses pursuant to Title 21 U.S.C. Section 851. The jury trial as to Joseph and Albert Kinsey commenced on April 7, 1987. At the trial Covert testified that Joseph and Albert Kinsey were active "rock" cocaine dealers at and before the time of their arrests. Albert Kinsey testified that he was not a "rock" cocaine dealer and he had only visited Sacramento to help his son, Joseph Kinsey, with his legal troubles. Joseph Kinsey did not testify during the trial.

On April 14, 1987, the jury reached a verdict and found Joseph and Albert Kinsey guilty of all counts as charged against them. On May 27, 1987, the District Court denied Joseph Kinsey's motion challenging the prior narcotics trafficking conviction. Accordingly, on June 17, 1987, the District Court found that on September 23, 1977, Albert Kinsey was convicted of two violations of California Health and Safety Code Section 11351—possession of cocaine and heroin for purpose of sale. The District Court also found that on February 18, 1986, Joseph Kinsey was convicted of a violation of California Health and Safety Code Section 11360(a)—sale of marijuana. In light of appellants' prior convictions, the District Court imposed separate 20 year sentences upon both Joseph and Albert Kinsey as to Count 1 and placed them on probation for a period of five years as to the remaining counts. Joseph and Albert Kinsey timely filed Notices of Appeal on June 17, 1987.

## DISCUSSION

1. ADMISSION OF NARCOTICS OFFICER'S EXPERT OPINION TESTIMONY.

Joseph Kinsey contends that the District Court committed reversible error by admitting the expert testimony of Detective Torres. Joseph Kinsey's argument re-volves around the following relevant portions of Detective Torres' trial testimony:

"BY MR. PORTANOVA:

Q. Detective Torres, is it your opinion that there was more than one person involved in the distribution of the cocaine that was found in Room 260?

A. Yes, sir.

.          .          .          .          .

Q. Is there anybody in this room who, in your opinion, was involved in the distribution of that cocaine?

.          .          .          .          .

A. Yes, sir.

Q. And who was that?

.          .          .          .          .

A. Joseph Kinsey.

Q. And what led you to that conclusion?

A. Joseph Kinsey had the major stash, the amount, the large amount of cocaine with him. Even though this bag had the name of Porter, he had access to the bag. Mr. Porter did not. Mr. Porter had a small amount of cocaine, was probably making deliveries, also had a small amount of cash, probably also making pickups, and that was my opinion.

Q. The—when you walked into the motel room, where was Mr. Joseph Kinsey relative to the narcotics on the night-stand?

A. Approximately two feet away.

Q. And what's the approximate value of that cocaine if it's broken up into small gram quantities?

A. Well, each ounce is $2,800.00.

Q. So four—

A. Times four—

Q. Times four.

A. So somewhere over $10,000.00?

Q. Somewhere there."

Joseph Kinsey asserts that since one's intent to distribute is a necessary element of the counts charged against him the District Court should not have allowed Detective Torres to testify that he, Joseph Kinsey, was "involved in the distribution of that cocaine." Joseph Kinsey contends that the inference which the jury allegedly

drew from such testimony was that he was not merely in the presence of the cocaine but that he also intended to distribute it.

The decision to admit expert testimony is committed to the discretion of the court and will not be disturbed unless manifestly erroneous. *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir.1987). *See United States v. Andersson*, 813 F.2d 1450, 1458 (9th Cir.1987); *United States v. McCollum*, 802 F.2d 344, 345–46 (9th Cir. 1986); *United States v. Fleishman*, 684 F.2d 1329, 1335 (9th Cir.). *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

Rule 704 of the Federal Rules of Evidence precludes an expert witness from testifying as to whether the defendant in a criminal case did or did not have the mental state where the mental state of the defendant constitutes an element of the crime with which defendant is charged.[1] Opinion testimony may therefore be given even if it encompasses an ultimate issue to be resolved by the trier of fact unless the testimony concerns the defendant's mental state or condition. A witness, however, may not give a direct opinion on the defendant's guilt or innocence. *Espinosa*, 827 F.2d at 612. *See also Fleishman*, 684 F.2d at 1335–1336. In *Espinosa*, we upheld the trial court's admission of expert testimony by a law enforcement officer where the officer testified that the defendant was using an apartment as a "stash pad" for money and narcotics, ledgers found in the apartment contained the names of the defendant's cocaine buyers, and an exchange of packages on a certain date was an exchange of narcotics for money. *Espinosa*, 827 F.2d at 611.

Similarly, in *United States v. Stewart*, 770 F.2d 825, 831 (9th Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed. 2d 922 (1986), we upheld the admission of a

Drug Enforcement Agency ("DEA") agent's expert testimony that the defendant's driving behavior indicated he was attempting to avoid surveillance and that, on another occasion, he was probably delivering drugs to customers. *See also Andersson*, 813 F.2d at 1458 (court upheld admission of expert testimony that defendants engaged in "counter-surveillance techniques").

In *Fleishman*, 684 F.2d at 1335–1336, we held that the trial court properly allowed an officer to testify that the defendant's actions showed he was acting as a lookout in a drug trafficking conspiracy case. Although defendant argued this testimony was tantamount to the officer testifying defendant was guilty, we distinguished opinions regarding a defendant's guilt or innocence from expert testimony regarding the various roles which an individual may play in illegal enterprises. We concluded that the expert testimony of the officer was relevant and its probative value outweighed any prejudice the testimony would have as an opinion on an ultimate issue.

Joseph Kinsey inappropriately relies on *United States v. Windfelder*, 790 F.2d 576, 582 (7th Cir.1986). There the Seventh Circuit held that an Internal Revenue Service agent's testimony that defendant "intentionally understated his income" in his income tax return and that "he was well aware of what happened to [his aunt's] assets prior to her dying" impermissibly stated an opinion as to the defendant's knowledge or willfulness, a mental state which constituted an element of the crimes charged. Notwithstanding this conclusion, however, the court ultimately held that any error which occurred in the admission of the expert testimony was harmless in light of the overwhelming evidence that the defendant willfully evaded the payment of income taxes.

---

1. Federal Rules of Evidence Rule 704 provides that:

"(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

(b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."

█ We conclude that the probative value of Detective Torres' testimony strongly outweighs any prejudice which the admission thereof would have as an opinion on an ultimate issue. An ultimate issue opinion by a properly qualifed expert should not be excluded except in the extreme case where the expert's opinion is inherently misleading or unfairly prejudicial. Rule 704(a)'s relaxation of the ultimate issue prohibition necessarily implies that the trial court must be vested with substantial discretion in its rulings as to the admissibility of ultimate issue testimony. The District Court did not abuse its discretion in the admission of Detective Torres' opinion testimony. Moreover, the evidence of Joseph Kinsey's guilt was so overwhelming and convincing that any error in the admission of Detective Torres' testimony would be harmless beyond a reasonable doubt.

## 2. WARRANTLESS ARREST OF JOSEPH KINSEY.

Albert Kinsey argues that the December 28, 1986 warrantless arrest of his son, Joseph Kinsey, was not supported by "exigent circumstances" and thus was an egregious violation of the law which led to Albert Kinsey's own arrest and prosecution. Although counsel for Joseph Kinsey did not move to suppress the evidence seized as a result of Joseph Kinsey's warrantless arrest and did not raise the issue of lack of probable cause of the arrest before or during trial, Albert Kinsey contends that his own conviction should be overturned since such error constituted a plain and fundamental error pursuant to Fed.R.Crim.P. 52(b).[2]

*Standing of Albert Kinsey to Object to the Warrantless Arrest of Joseph Kinsey.*

█ At the outset we hold that Albert Kinsey has no standing to object to the validity of the warrantless arrest of his son, Joseph Kinsey, and is thus unable to assert that the warrantless arrest of Joseph Kinsey, including all evidence seized therefrom, was illegal. Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 425, 58. L.Ed.2d 387 (1978); *Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968); *Wong Sun v. United States*, 371 U.S. 471, 492, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963).

█ A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). Since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. *Rakas*, 439 U.S. at 134, 99 S.Ct. at 425.

█ In particular, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged "injury in fact;" and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties. *Rakas*, 439 U.S. at 139, 99 S.Ct. at 428. *See also Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976); *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

---

**2.** Federal Rules of Criminal Procedure Rule 52 provides that:

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Albert Kinsey asserts the rights of his son, Joseph Kinsey, as one of the grounds for his instant appeal. Where the right to challenge the warrantless arrest was not personal to Albert Kinsey the possibility that Albert Kinsey may have been aggrieved by Joseph Kinsey's warrantless arrest does not entitle him to challenge the validity of the search and seizure.

Similarly, in *U.S. v. Grandstaff*, 813 F.2d 1353, 1354 (9th Cir.1987), the FBI, on the basis of a tip from an informant regarding certain fugitive bank robbers, went to a motel to observe the alleged robbers' conduct. The FBI agents observed defendant # 1 checking out of the motel and arrested him as he attempted to return to his room. The agents searched defendant # 1, obtained a key to his motel room, and entered without knocking or announcing their presence. Inside the motel room the agents found and arrested defendant # 2. They also found luggage which they did not open. The next day the FBI agents obtained a search warrant authorizing the search of the motel room. The trial court granted both defendants' motions to suppress the evidence found in the motel room. On appeal we found that in order for defendant # 2 to challenge on Fourth Amendment grounds the government's use of the evidence obtained as a result of the FBI agent's entry into the motel room, defendant # 2 had to demonstrate "a legitimate expectation of privacy in the area searched." *Grandstaff*, 813 F.2d at 1357; *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980); *Rakas*, 439 U.S. at 148–49, 99 S.Ct. at 433; *United States v. Pollock*, 726 F.2d 1456, 1465 (9th Cir.1984). The motel room was registered to defendant # 1. The Court held that although the parties stipulated that defendant # 2 was defendant # 1's guest and a guest who stays overnight and keeps personal belongings in the residence of another might have a reasonable expectation of privacy, the mere presence in the motel room of another is not enough. Thus, defendant # 2 had no standing to challenge the FBI agent's entry into the motel room. *Grandstaff*, 813 F.2d at 1357.

Albert Kinsey was not in the motel room on December 28, 1986, the date Joseph Kinsey's warrantless arrest occurred. Albert Kinsey was not registered at the motel and had no personal belongings in the motel room. In sum, Albert Kinsey had no connection to the events which occurred on December 28, 1986. As such, there are absolutely no factual circumstances from which one is able to infer that Albert Kinsey had a legitimate expectation of privacy in Joseph Kinsey's motel room on December 28, 1986. Irrespective of the fact that the government did not raise the issue of standing prior to or during trial we find that Albert Kinsey lacks standing to object to both Joseph Kinsey's warrantless arrest and the admission of any evidence resulting therefrom.

3. **APPELLANTS' RIGHT TO A JURY TRIAL ON THE VALIDITY OF THEIR ALLEGED PRIOR NARCOTICS TRAFFICKING CONVICTIONS.**

■ On April 1, 1987, the government filed an Information against both Joseph and Albert Kinsey Charging Prior Offenses Pursuant to Title 21 U.S.C. Section 851. The Information charged that Albert Kinsey had previously been convicted of two felonies under the laws of the State of California. First, Albert Kinsey was convicted on or about September 23, 1977, in the Superior Court of the State of California for the County of Los Angeles, of unlawful possession for purposes of sale of a controlled substance [cocaine]. Albert Kinsey was also convicted on or about September 23, 1977, in the Superior Court of the State of California for the County of Los Angeles, of unlawful possession for purposes of sale of a controlled substance [heroin]. As for Joseph Kinsey, the Information charged that on or about February 18, 1986, Joseph Kinsey was convicted under the laws of the State of California in the Superior Court for the County of Los Angeles of unlawful sale of a controlled substance [marijuana].

Title 21 U.S.C. Section 841(b)(1)(A) provides that if any person commits a violation under Section 841 after one or more prior convictions for an offense punishable under

the same section or for a felony relating to narcotic drugs, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and may not be more than life imprisonment.[3] Accordingly, the District Court imposed sentences of 20 years upon both Joseph Kinsey and Albert Kinsey as to Count 1 and suspended imposition of sentencing as to the remaining counts charged against each appellant respectively.

Title 21 U.S.C. Section 851(a) allows the United States attorney to file an information with the court setting forth a person's previous convictions for purposes of increased punishment or enhanced sentencing. Title 21 U.S.C. Section 851(e) further provides that no person who stands convicted of a related offense may challenge the validity of any prior conviction alleged under Section 851 which occurred more than five years before the date of the information alleging such prior conviction.[4]

Both Joseph Kinsey and Albert Kinsey rely upon *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) for their contention that they were denied the right to a jury trial on the validity of their prior convictions. Appellants contend that the right to a jury trial attaches whenever there is an allegation which subjects a defendant to the potential of more than six months imprisonment. *Baldwin*, 399 U.S. at 69, 90 S.Ct. at 1888. Joseph and Albert Kinsey also assert that the statutory provisions of Title 21 U.S.C. Section 851(e) deprive them of their right to a jury trial since they were

not allowed to challenge the validity of the prior convictions as the convictions were over five years old.[5]

In *United States v. Ilacqua*, 562 F.2d 399, 404 (6th Cir.1977), the Sixth Circuit held that the dangerous special offender provisions of Title 18 U.S.C. Section 3575, et seq. (1970) "partook of the nature of a recidivist statute (citation omitted), and as such, the feature of an enhanced sentence does not constitute a separate criminal charge requiring indictment by a grand jury." *See also United States v. Darby*, 744 F.2d 1508, 1538 (11th Cir.1984) (sentence enhancement provisions of the dangerous special offender statute did not create new criminal charges but merely introduced circumstances in aggravation of the offense for which the conviction was obtained); *United States v. Stewart*, 531 F.2d 326, 334 (6th Cir.1976) (invocation of "increased sentence" procedure of dangerous special offender statute was not a separate criminal charge).

We find the penalty provisions of Title 21 U.S.C. Section 841(b)(1)(A) analogous to a recidivist statute. The purpose underlying Congress' enactment of multiple offender penalties with respect to narcotic laws is to punish violators more severely, deter the criminal who engages in illicit drug traffic, and take habitual violators out of circulation. *Tanzer v. United States*, 278 F.2d 137, 141 (9th Cir.), *cert. denied*, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 (1960); *United States v. Buia*, 236 F.2d 548 (2d Cir.1956). We hold that the sentence enhancement provisions of Title 21 U.S.C. Section 841(b)(1)(A) and related Section

---

**3.** Specifically, Title 21 U.S.C. Section 841(b)(1)(A) provides, in relevant part, that:

"... If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter 11 of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marijuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment."

**4.** Title 21 U.S.C. Section 851(e) provides that:

"No person who stands convicted of an offense under this part may challenge the validity of any prior conviction under this section which occurred more than five years before the date of the information alleging such prior convictions."

**5.** In a discussion of the interrelationship between Sections 851(b) and (e) the Court in *United States v. Nanez*, 694 F.2d 405, 413 (5th Cir. 1982) stated that: [t]he only sound approach to a resolution of the interrelationship of these facially conflicting sections is that it was Congress' firm intent to condition, by way of Section 851(e), a defendant's right to challenge a prior conviction.

851(e) do not deny a criminal defendant his or her constitutional right to a jury trial but merely set forth aggravating circumstances the presence of which require a trial court to increase the sentence of a habitual offender. Accordingly, we hold that the sentence enhancement provisions of Title 21 U.S.C. Section 841(b)(1)(A) and related Section 851 do not create criminal charges which necessarily guarantee a person his or her right to a jury trial. As such, the District Court did not improperly deny Joseph or Albert Kinsey their constitutional right to a jury trial on the validity of their prior convictions and the District Court properly used appellants' prior convictions for purposes of sentence enhancement.

### 4. CONSTITUTIONALITY OF THE MINIMUM PENALTY PROVISIONS OF TITLE 21 U.S.C. SECTION 841(b)(1)(A).

#### A. *Cruel and Unusual Punishment in Violation of the Eighth Amendment of the United States Constitution.*

Joseph and Albert Kinsey contend that the District Court's imposition of their separate 20 years sentences pursuant to Title 21 U.S.C. Section 841(b)(1)(A) violates their Eighth Amendment rights to be free from cruel and unusual punishment. We disagree.

The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). A court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for

commission of the same crime in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3011.

Reviewing courts, however, should also grant substantial deference both to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. *Id.* at 290, 103 S.Ct. at 3009. Sentencing which falls within statutory limits is not subject to appellate review absent an abuse or abdication of discretion. *See, e.g., Polakof v. Commission of Internal Revenue*, 820 F.2d 321, 328 (9th Cir.1987). *See also United States v. Potts*, 813 F.2d 231, 233 (9th Cir.1987) (general rule is that sentences within statutory limits are unreviewable and appellate courts may only review sentencing to ensure that there was an exercise of discretion rather than an imposition of a sentence on a mechanical basis).

Reviewing courts, however, have remanded for resentencing where the sentencing court in effect refused to exercise its discretion, and where the District Court exceeded the bounds of its sentencing discretion by failing to individualize sentences. *United States v. Barker*, 771 F.2d 1362, 1364 (9th Cir.1985). *See also United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Lopez–Gonzales*, 688 F.2d 1275, 1276 (9th Cir.1982).

Joseph Kinsey was found guilty of: 1) conspiracy to distribute cocaine and 2) possession with intent to distribute cocaine on two separate occasions. Albert Kinsey was found guilty of: 1) conspiracy to distribute cocaine and 2) possession with intent to distribute cocaine on one occasion. Both appellants had previously been convicted under the laws of the State of California for possession of various narcotic drugs for the purpose of sale. The District Court imposed separate 20 year sentences upon each appellant. These sentences did not exceed the maximum term which the District Court could have imposed.[6] The

---

**6.** Title 21 U.S.C. Section 841(b)(1)(A) requires

that the district court impose a minimum sen-

sentences, therefore, fell within the scope of statutory sentencing limits. The sentences further reflect an individualized assessment of each appellant's culpability and circumstances. *See United States v. Barker,* 771 F.2d 1362, 1365–69 (9th Cir. 1985). We conclude that the District Court did not abuse its discretion in imposing individual 20 year sentences upon both Joseph and Albert Kinsey.

### B. *Violation of Separation of Powers Doctrine.*

Both Joseph and Albert Kinsey argue that the mandatory minimum penalty provisions of Title 21 U.S.C. Section 841(b)(1)(A) violate the principles of the doctrine of separation of powers. Appellants contend that the statute removes the discretionary power of the sentencing judge and therefore is contrary to Article III of the United States Constitution which guarantees the independence of the judiciary.

■ A sentence of imprisonment is a matter of legislative discretion. *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980). Furthermore, Congress has the inherent power to adopt penal and rehabilitative provisions in response to the pervasive drug traffic problem. *United States v. Simpson,* 481 F.2d 582, 584 (5th Cir.1973), *cert. denied,* 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973).

In *United States v. Rodriquez–Camacho,* 468 F.2d 1220, 1222 (9th Cir.1972), *cert. denied,* 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973) we held that enactment of Title 21 U.S.C. Section 841 proscribing possession of a controlled substance with intent to distribute was a permissible method by which Congress could control persons and enterprises engaged in manufacture, trade and distribution of specified drugs. The class of activities regulated under Title 21 U.S.C. Section 801 et seq. is clearly within Congress' commerce power. *See United States v. Lopez,* 459 F.2d 949, 953 (5th Cir.1972), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972); *United States v. Esposito,* 492 F.2d 6, 10 (7th Cir.1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974); *United States v. Scales,* 464 F.2d 371, 376 (6th Cir.1972).

■ We therefore hold that the mandatory minimum penalty provisions of Title 21 U.S.C. Section 814(b)(1)(A) do not violate the doctrine of separation of powers. Control and enforcement of drug abuse and drug trafficking fall within the scope of Congress' delegated powers and such mandatory penalty provisions do not threaten the independence of the judiciary as set forth in Article III of the United States Constitution.

### C. *Violation of Equal Protection Clause of Fourteenth Amendment of the United States Constitution.*

Joseph and Albert Kinsey also submit that Title 21 U.S.C. Section 841(b)(1)(A) violates their rights to equal protection of the laws as provided for in the Fourteenth Amendment of the United States Constitution. Specifically, appellants contend that the wide disparity among state and foreign drug enforcement laws often result in different sentencing schemes. Consequently, two persons who commit the same crime in different states may be subject to different sentences. Under such circumstances appellants argue that application of Section 841(b)(1)(A) would be unconstitutional since applicability of the sentence enhancement provision would depend upon the scope of the particular drug enforcement law under which the person was convicted.

■ At the minimum level of equal protection analysis, it is required that the legislation classify the persons it affects in a manner rationally related to legitimate

---

tence of at least 10 years in the absence of any prior conviction. If the person has been convicted of a prior drug related crime then the statute requires the court to impose a sentence of not less than 20 years and not more than life imprisonment. Thus, the district court imposed the minimum term allowed within statutory limits.

governmental objectives. *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981). Thus, Title 21 U.S.C. Section 841(b)(1)(A) would only violate appellants' rights to equal protection of the laws if it did not bear any rational relationship to a legitimate governmental interest. *See Roberts v. Spalding,* 783 F.2d 867, 872 (9th Cir.1986); *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

We find the contrary to be true. In fact, it is apparent that the mandatory minimum sentencing provisions in Title 21 U.S.C. Section 841(b)(1)(A) are rationally related to the strong governmental interest in the deterrence of drug abuse and drug trafficking. We are unable to state more clearly the government's interest in imposing a mandatory minimum sentence for violation of drug laws. Indeed, we find it unnecessary to elaborate on the legitimacy of such a governmental interest. The statute, furthermore, still affords the courts sufficient discretion during the sentencing phase to consider individual factors in the final imposition of the sentence.

We conclude that the mandatory minimum penalty provisions of Title 21 U.S.C. Section 841(b)(1)(A) do not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and, accordingly, we find that appellants' constitutional rights to equal protection of the laws have not been violated.

AFFIRMED.