**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John GARREN, Defendant–Appellant.**

No. 87–3031.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1989.

Decided Aug. 30, 1989.

---

428

Marc Blackman, Portland, Or., for defendant-appellant.

Joseph Douglas Wilson, Attorney, Appellate Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before TANG, SKOPIL and KOZINSKI, Circuit Judges.

TANG, Circuit Judge:

John Garren appeals his conviction for rafting on a federally regulated river without a permit in violation of 43 C.F.R. 8351.-2–1(e). He contends that by subjecting non-commercial river rafters to harsher penalties than commercial river rafters the various regulations and their enforcement violate equal protection. He also argues that the Bureau of Land Management (BLM) and the United States Forest Service (USFS) do not comply with their own regulations when allocating rafting permits on Wild and Scenic Rivers. These arguments are meritless and his conviction is affirmed.

Garren also appeals the district court's order assessing a fine of $5,000 as legally excessive and without authority. The government concedes that the fine must be vacated but asks this court to exercise its discretion under 28 U.S.C. § 2106 and to remand for resentencing with authorization to the district court to impose incarceration. It argues that as the district court had observed at the initial sentencing hearing a reduced fine alone is insufficient to serve the ends of justice.

We vacate the sentence as in excess of statutory authority. The maximum permissible fine is $500.00, not $5,000. We

remand for resentencing pursuant to the provisions of 28 U.S.C. § 2106.

*Factual Background*

On February 25, 1982, the Department of Agriculture and the BLM under authority of the Wild and Scenic Rivers Act, 16 USC § 1271, and other laws and regulations, gave public notice of its revised development and management plans for the Rogue River in Oregon. In general, the managing agencies began to regulate float trips within regulated areas of the river through a permit system. 47 Fed.Reg. No. 38, p. 8235 (1982).

On July 3, 1985, thirteen non-commercial river rafters launched a "protest float" into a portion of the Rogue River that was regulated by the BLM and USFS.[1] Appellant Garren and twelve others, in apparent protest of the government's regulation of rafting access on the Rogue River, purposefully launched their rafts without first obtaining requisite use permits. Garren was cited and convicted for rafting without a permit.

*Sentencing Background*

At Garren's initial sentencing hearing the court asked government counsel what maximum fine the court could levy. Counsel responded that "the petty offense is a misdemeanor which under the 1984 revisions allow a fine up to $5,000." The court stated that a $500 fine would be inadequate; that in order to achieve the purposes of sentencing a term in jail would be appropriate. The court later recessed to allow the parties to research the issue of whether the maximum fine was $500 or $5,000.

Upon reconvening, the court discussed the fine issue further. Garren's counsel commented that the higher fines could trigger the right to trial by jury. The court

treated counsel's comment as a motion and denied it without analysis of the right to jury trial issue because the ruling on appeal would be reviewed de novo. The court imposed a fine of $5,000.[2]

The Court committed Garren to six months imprisonment and fined the sum of $5,000, payable within 60 days but suspended execution of the sentence of imprisonment and placed Garren on non-supervised probation for a period of five years and the following special conditions:

1. Defendant not entitled to use the Rogue River during calendar year 1987 and the Illinois River during calendar year 1988.
2. Defendant not to violate any rules and regulations of Federal or State, authorities, or both, of Wild & Scenic River areas and Wilderness areas in the State of Oregon.

Garren appealed on March 20, 1987, from the Judgment and Probation/Commitment Order filed in the action on March 10, 1987.

*Standard of Review*

Determining the proper method for calculating the severity of a sentence is reviewed de novo. *United States v. Bay,* 820 F.2d 1511, 1513 (9th Cir.1987).

*Discussion*

The government concedes "that the district court erred by sentencing appellant to a $5,000 fine and that his sentence must be vacated and his case remanded to the district court for resentencing." The parties agree that a violation of 43 C.F.R. § 8351.2–1(e) is punishable by 43 C.F.R. § 8351.2–1(f) which provides for a fine not to exceed $500.00, imprisonment not to exceed 6 months or both as follows:

Any person convicted of violating any prohibition established in accordance with this section shall be punished by a

---

1. The U.S. Forest Service has the lead responsibility for administering the non-commercial river rafting system. The BLM has the lead responsibility for administering the commercial system. 47 Fed.Reg. No. 38, p. 8236 (1982).

2. The court "engage[d] in no particular analysis," but apparently relied upon 18 U.S.C. § 1 in assessing the $5,000 fine. 18 U.S.C. § 1(3) then provided that

"[n]otwithstanding any Act of Congress to the contrary ... [a]ny misdemeanor, the penalty for which, as set forth in the provision defining the offense, does not exceed imprisonment for a period of six months or a fine of not more than $5,000 for any individual, is a petty offense."

fine not to exceed $500 or by imprisonment for a period not to exceed 6 months, or both, and shall be adjudged to pay all costs of the proceedings.

*Effect of Excessive Sentence*

■ When a court exceeds its sentencing authority, only the excessive portion of the sentence is void. *United States v. Green,* 735 F.2d 1203, 1206 (9th Cir.1984), (citing *Kennedy v. United States,* 330 F.2d 26, 27 (9th Cir.1964)). This court has "interpreted *Kennedy* as holding that, where an original sentence was in excess of the statutory limit, . . . the district court 'was limited to correcting the original sentence by eliminating the excess that rendered it illegal.'" *United States v. Minor,* 846 F.2d 1184, 1188 (9th Cir.1988) (quoting *United States v. Clutterbuck,* 445 F.2d 839, 840 (9th Cir.), *cert. denied,* 404 U.S. 858, 92 S.Ct. 108, 30 L.Ed.2d 100 (1971)).

The government relies on *Minor,* 846 F.2d at 1187–89 n. 5 (9th Cir.1988) and *United States v. Hagler,* 709 F.2d 578, 579 (9th Cir.1983), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983), for its argument that on remand the district court should be empowered to reconsider Garren's entire sentence and not merely to correct the illegal portion of Garren's sentence. Garren on the other hand argues that *Minor* does not stand for the proposition that the Court of Appeals must authorize resentencing as a whole when the district court has imposed a partially illegal sentence. The government requests authorization for complete and total resentencing.

In *Minor,* we held that Fed.R.Crim.P. 35(a) does not authorize a district court to impose a more severe sentence subsequent to the correction of an illegal sentence where service of the legal portion has commenced. *Minor,* 846 F.2d at 1188. We also refused the government's request pursuant to 28 U.S.C. § 2106 [3] to order resentencing because "[i]t seem[ed] hardly appropriate to give the government another bite at the same apple before the district court." *Minor,* 846 F.2d at 1189 n. 5.

*Minor* is distinguishable however because it involves the reversal of one count only of a multicount conviction. There the district court was not permitted to resentence on all counts but rather was restricted to resentencing on the count only where a defective sentence was imposed. Here there is only one charge, and the district court in addition to the fine had suspended Garren's sentence of six months incarceration and placed him on probation with special terms.

In *Kennedy* this court distinguished the power of a district court, acting on its own authority pursuant to Fed.R.Crim.P. 35 to correct a sentence as contrasted to the power to resentence pursuant to direction of the Court of Appeals. In a Rule 35 proceeding the district court is limited to correcting the original sentence by eliminating the excess that rendered it illegal. On remand, however, under 28 U.S.C. § 2106, the district court can be empowered by the Court of Appeals to impose an entirely new sentence. *Clutterbuck,* 445 F.2d at 840. The determinative issue here is whether we should authorize the district court to sentence Garren anew.

■ Generally, in federal courts a sentencing judge may increase a sentence so long as the defendant has not yet begun to serve that sentence. *United States v. DiFrancesco,* 449 U.S. 117, 134, 101 S.Ct. 426, 435, 66 L.Ed.2d 328 (1980). The government argues that Garren should be subject to resentencing because the court had suspended the execution of his sentence. However, when, as here the execution of a sentence is suspended there is an actual sentence imposed which becomes effective upon revocation of probation unless a lesser sentence is imposed. *United States v.*

---

**3.** 28 U.S.C. § 2106 "Determination" provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment decree, or order, or require such further proceedings to be had as may be just under the circumstances. *See United States v. Andersson,* 813 F.2d 1450, 1460–61 (9th Cir.1987).

*McDonald,* 611 F.2d 1291, 1295 (9th Cir. 1980). Furthermore, a judgment of conviction that includes a sentence of probation constitutes a final judgment. 18 U.S.C. § 3562(b)(3).

■ If Garren has begun serving his sentence, the district court may not increase his sentence. This would be especially true should Garren have successfully completed the special terms of his probation which restricted his rafting activities during 1987 and 1988. Nevertheless, this court has held that the correction of an illegally imposed sentence does not violate double jeopardy even if the correction increases the punishment; the fact that the defendant has commenced serving the sentence is irrelevant. *United States v. Stevens,* 548 F.2d 1360, 1362–63 (9th Cir.) *cert. denied,* 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977). Hence Garren's status as a probationer does not preclude us from remanding for resentencing. Moreover, the Supreme Court did not comment in *DiFrancesco* on the traditional limitation of increasing sentence only when the defendant has not begun serving his term. 449 U.S. at 134, 101 S.Ct. at 435. On the contrary, it held that "(t)he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137, 101 S.Ct. at 437.

*DiFrancesco* makes clear that when a sentence is increased in a second proceeding the application of the double jeopardy clause turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited. *United States v. Fogel,* 829 F.2d 77, 87 (D.C.Cir. 1987). Garren could have no legitimate expectation of finality in an illegal sentence. *United States v. Edmonson,* 792 F.2d 1492, 1496, n. 4 (9th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). In accordance with our authority under 28 U.S.C. § 2106, we remand for resentencing to correct its excessive fine and leave Garren on probation

with appropriate consideration to be given to any intervening equities as may be just under the circumstances.

*Equal Protection Background*

Garren made a Fed.R.Crim.P. 12(b) motion for an order to dismiss the case on the grounds that: (1) the government's failure to comply with its own regulations when granting permits to non-commercial users precluded prosecution, and (2) the Government's disparate treatment of non-commercial and commercial users precludes imposition of criminal sanctions.

The court denied Garren's disparate treatment/equal protection argument on the grounds that there is a rational relationship between the permit regulation and the purposes it seeks to achieve. The court rejected Garren's argument that the Rogue River access allocation system denies him equal protection because it does not adequately reflect public demand. The court found the demand argument meritless and unsupported by the statistics on river use.

The court also rejected Garren's argument that the BLM and the USFS are not complying with their regulations regarding the equal allocation of river access. The court rejected Garren's assertion that the river is actually used 63% of the time by commercial and 37% of the time by non-commercial rafters as "simply erroneous." In short, the court reached the opposite conclusion by holding that the regulations as written favor non-commercial users and that "[i]f either group has reason to argue unequal apportionment in practice, the numbers indicate it would be commercial rather than the non-commercial users." The court's conclusion that commercial users are treated less favorably is based on its finding that non-commercial use has exceeded commercial use every year since 1980.

The court also rejected Garren's second equal protection argument: that by regulation non-commercial violators may be jailed for six months and/or fined $500 whereas commercial permit holders are merely subject to administratively imposed loss of future river space allocations, and no actual penalty. The court concluded that commer-

cial outfitters may be assessed the same criminal penalties to which non-commercial outfitters are subject in addition to administrative sanctions.

Finally, the court rejected Garren's argument that the non-commercial outfitters are in practice subject to criminal fines and that commercial rafters receive only administrative penalties.

*Standard of Review*

Health, safety and economic classifications not based on race or gender are reviewed at the minimum level of equal protection analysis. The legislation need only classify the persons it affects in a manner rationally related to legitimate governmental objectives. *United States v. Kinsey,* 843 F.2d 383, 393–94 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988) (citing *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)). Thus the regulations at issue here would only violate Garren's rights to equal protection if they did not bear any rational relationship to a legitimate government interest. *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970); *Kinsey,* 843 F.2d at 394, (citing *Roberts v. Spalding,* 783 F.2d 867, 872 (9th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986)).

The system of allocating access between commercial and non-commercial river rafters is not per se an arbitrary method of recognizing and accommodating the interests of the two classes. The issue is whether the allocation is fair and made pursuant to appropriate standards. *Wilderness Public Rights Fund v. Kleppe,* 608 F.2d 1250, 1254 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1979).

There is a judicial presumption favoring the validity of administrative action. *Id.* The district court's factual findings regarding the validity of administrative action concerning the Rogue River permit system are reviewed for clear error. Its legal conclusions are subject to de novo review. *United States v. Stone,* 813 F.2d 1536, 1538 (9th Cir.), *cert. denied,* 484 U.S. 839, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987).

*Commercial Rafters Subject to Criminal Penalties*

■ Garren argues that the regulations provide for the imposition of criminal sanctions against non-commercial rafters but only administrative sanctions against commercial outfitters. As the Federal Register reveals, this argument is meritless. 47 Fed.Reg. No. 38 (Feb. 82) provides in pertinent part at page 8237:

III Enforcement of Permit Requirements

B. Commercial

\*   \*   \*   \*   \*   \*

... An Authorized Outfitter and all agents, guides, employees, and passengers *are also subject to other penalties* prescribed under the authorities stated herein and to the penalties prescribed *under other federal, state or local laws* or regulations. (emphasis added).

The regulation does not provide, as Garren argues, that no commercial user is subject to criminal penalties. The district court's holding that commercial outfitters may be assessed the same criminal penalties to which non-commercial outfitters are subject is affirmed.

*Actual Usage v. Opportunity to Use*

■ Garren argues that the government's regulation requires the BLM to grant commercial and non-commercial users the same *"opportunity"* to obtain a permit. As the district court observed, Garren's argument erroneously fails to distinguish between the allocation and use of the permits.

47 Fed.Reg. 38 provides in pertinent part:

Total use on the river during the regulated period is restricted to approximately 120 people per day with opportunity for the non-commercial and commercial users to each use approximately 50 percent of that *total use.*

47 Fed.Reg. No. 38 p. 8236 (1982) (emphasis added).

The plain language of this regulation indicates that commercial and non-commercial users are entitled to the opportunity to "each use approximately 50 percent of the total use." Therefore, the court's finding that non-commercial use has exceeded commercial use every year since 1980 proves that the BLM/USFS have complied with the regulation.

In the final analysis we may only strike down the BLM/USFS allocation procedure if it is arbitrary. In *Kleppe*, 608 F.2d at 1253, we observed that:

> In issuing permits, the Service has recognized that those who make recreational use of the river fall into two classes: those who have the skills and equipment to run the river without professional guidance and those who do not.... We must confine our review of the permit system to the question whether the NPS has acted within its authority and whether the action taken is arbitrary. Allocation of the limited use between the two groups is one method of assuring that the rights of each are recognized and, if fairly done pursuant to appropriate standards, is a reasonable method and cannot be said to be arbitrary. It is well within the area of administrative discretion granted to the NPS.

(citations omitted).

Just as the National Park Service was well within its administrative discretion in *Kleppe*, so too is the BLM and USFS within their administrative discretion here. Hence the issue is whether the allocation of river rafting opportunities between commercial and non-commercial outfitters on the Rogue River is "fairly done pursuant to appropriate standards, is a reasonable method and cannot be said to be arbitrary." *Kleppe*, 608 F.2d at 1253. Garren has not shown otherwise and accordingly his conviction is affirmed.

## CONCLUSION

We affirm Garren's conviction, but vacate the sentence as in excess of statutory authority and remand for resentencing under 28 U.S.C. § 2106.

AFFIRMED IN PART, VACATED IN PART and REMANDED.