Scott B. MERRIMAN,
Plaintiff–Appellee,

v.

Richard WALTON, Deputy Individually and in his capacity as a Deputy Sheriff for the County of Humboldt; Red Marler, Individually and in his official capacity as a Deputy Sheriff for the County of Humboldt; the County of Humboldt, State of California, Dave Renner, Sheriff, in his official capacity as the Sheriff of Humboldt County, Defendants–Appellants.

No. 87–2382.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1988.

Decided Sept. 7, 1988.

John M. Vrieze, Mitchell, Dedekam & Angell, Eureka, Cal., for defendants-appellants.

Bernard C. De Paoli, Eureka, Cal., for plaintiff-appellee.

Before GOODWIN, SCHROEDER and POOLE, Circuit Judges.

GOODWIN, Chief Judge:

Defendants, Humboldt County sheriff officers, appeal the order denying their motion for summary judgment based upon their qualified immunity to the plaintiff's § 1983 action for wrongful arrest. We affirm.

Scott B. Merriman was arrested by a Humboldt County deputy on suspicion of

having kidnapped Wendy Cantrell, his long-time girlfriend. The information leading to the arrest began to flow at 11 p.m. on July 16, 1986. Cantrell's half-brother, William Ivey, telephoned the sheriffs' department to report that his sister possibly had been kidnapped. Deputy Richard Walton was dispatched to Ivey's house. Ivey told Walton that he had received a phone call from Cantrell's friend, Kim Martinez, and that Martinez had told him the following: Earlier that evening, she and Cantrell were together at the Clam Beach Inn when Merriman arrived and argued with Cantrell. When Martinez and Cantrell drove away, Merriman followed their automobile until it stopped. Merriman and Cantrell then struggled, and, as he forced her into his car, she told Martinez to call the police. Just before midnight, Sgt. James Marler contacted Martinez, who repeated her report to him.

Deputy Walton then checked Merriman's residence, observing that Merriman's vehicle was gone and that the house was unoccupied. Based on the information he had received, and upon his inability to find Merriman and Cantrell, Walton that night requested an all-points bulletin to other officers. Walton's shift ended at 2 a.m.

The next morning, another deputy sheriff was unable to locate either Merriman or Cantrell at either of their residences or at the elementary school where Merriman was a teacher. When Walton arrived at work around 4 p.m. that afternoon, he was advised that Merriman had phoned the sheriffs' department and told them that he would be at his residence after 5 p.m. Walton went to Merriman's home but did not find Merriman. Walton then went to Ivey's residence. Ivey told Walton that Cantrell had returned. Ivey repeated to Walton what Cantrell had told him, including her statement that she had spent the night at a cabin owned by Elaine Howell. Ivey said that Cantrell had told him that "she had been messed up on booze and drugs the night before and that she did not remember what had happened." He said that Cantrell had told him that she believed that there was an outstanding warrant for her arrest and that she had called a friend

and left home around 2 p.m. without telling him where she was going.

Walton next proceeded to Howell's residence, where he saw Merriman's vehicle. Howell told him that Merriman was inside and invited him in. Merriman told Walton that he had followed Cantrell and Martinez and that the two women had gotten into a fight, which he had broken up. Merriman said that Cantrell voluntarily got into his car and that they had spent the night together. Walton then arrested Merriman. At that time, Walton said, he knew of no one from the sheriffs' department who had contacted Cantrell. (Cantrell later made an uncorroborated statement that she called the sheriffs' department at about 2 p.m. that afternoon—in the presence of her mother and Ivey—to tell them that she had not been kidnapped and did not want to press charges against Merriman.)

Merriman was released from jail July 18, after Cantrell indicated that she did not wish to pursue prosecution. She did state her intent to obtain a restraining order to keep Merriman away. Merriman was never charged with any crime.

Merriman sued Walton, Marler, Humboldt County Sheriff Dave Renner, and Humboldt County, seeking compensatory and punitive damages. Merriman alleged a violation of 42 U.S.C. § 1983 (1982), claiming that his warrantless arrest was made without probable cause and that the county had a policy and custom of permitting unlawful arrests.

After seven months of discovery, all defendants moved for summary judgment under Fed.R.Civ.P. 56, arguing that the defendant officers had probable cause and, alternatively, that they reasonably believed that they had probable cause.

The district court denied the motion. The court characterized the question in terms of probable cause and an assertion of qualified immunity. The court found, without discussion of the facts, that the parties' papers demonstrated the existence of genuine issues of material fact.

■ Although orders denying summary judgment are generally not appealable, the

denial of a claim of qualified immunity is an appealable "final decision" under 28 U.S.C. § 1291 (1982) to the extent that it turns on an issue of law. *See Mitchell v. Forsyth,* 472 U.S. 511, 528–30, 105 S.Ct. 2806, 2816–18, 86 L.Ed.2d 411 (1985); *White by White v. Pierce County,* 797 F.2d 812, 814–15 (9th Cir.1986).

*Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), sets forth the inquiry concerning the existence of a clearly established right under the fourth amendment: "The relevant question in this case ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the plaintiff's] warrantless [arrest] to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.* 107 S.Ct. at 3040; *see also Tomer v. Gates,* 811 F.2d 1240, 1242 (9th Cir.1987) (*quoting Guerra v. Sutton,* 783 F.2d 1371, 1374 (9th Cir.1986)) (finding that an officer was entitled to qualified immunity if he "acted under an objectively *'reasonable* (even if mistaken) belief that what [he was doing] was lawful' ") (emphasis in original).

Thus, the question here is whether a reasonable police officer, knowing what Walton knew, could have believed there was probable cause for Merriman's warrantless arrest. We think the answer is no.

Probable cause is determined by applying a "totality-of-the-circumstances" analysis. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Probable cause requires "a probability or substantial chance of criminal activity." *Id.* at 243 n. 13, 103 S.Ct. at 2335 n. 13.

■ The information that Walton possessed at the time of Merriman's arrest was as follows: There was a report that Cantrell had been kidnapped, but since the time of that report, Walton had obtained additional information. Walton knew that the alleged victim of the kidnapping had returned. Walton knew that Merriman, the alleged perpetrator, was a local school teacher who was Cantrell's long-time boyfriend. Walton knew that Merriman had telephoned the police station and stated he was available for police questioning. When Walton contacted Merriman, Merriman was cooperative and volunteered his version of what had happened. Under these circumstances, there is no probable cause. A reasonable police officer would have made further inquiry before effecting a warrantless arrest.

The decision of the district court denying the defendants' motion for summary judgment based upon qualified immunity is affirmed.

AFFIRMED AND REMANDED.