9 F.3d 1551
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael D. HUSON, Plaintiff-Appellee,
v.
The CITY OF CASTLE ROCK; Gilbert R. Vaughn, in his Official
Capacity and Individually, Defendants-Appellants.
 No. 92-35186.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided Oct. 29, 1993.
 
 Before: GOODWIN, SCHROEDER, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The City of Castle Rock and Gilbert R. Vaughn, its chief of police, appeal a judgment entered against them after a jury verdict on Michael D. Huson's suit under 42 U.S.C. § 1983 and Washington state law arising from Huson's arrest without probable cause. We affirm.
 
 FACTUAL BACKGROUND
 
 3
 Huson is a life-long resident of Castle Rock, a Washington city with a population of 2000. Huson was previously mayor of the city for 16 years. Gilbert R. Vaughn is Castle Rock's chief of police.
 
 
 4
 In May 1988, approximately $1200 disappeared from the trunk of Huson's car. The money belonged to the Castle Rock's Lions Club and represented the proceeds of a Lions Club weekend food concession. A 17-year-old juvenile, who had been placed to live with Huson by a nearby juvenile detention facility, disappeared at the same time the money did. Huson suspected that the juvenile stole the money. Huson immediately reported the theft to the police and provided them with evidence linking the theft to the juvenile boarder.
 
 
 5
 In August 1988, Vaughn arrested Huson without a warrant at his home for the theft. Vaughn decided to arrest Huson after personally investigating the theft. Huson was charged with theft in the second degree and detained at the city jail for several hours before he was released on bail.
 
 
 6
 In February 1989, the prosecutor's office formally dismissed the theft charge against Huson. The juvenile boarder was not further investigated or arrested.
 
 PROCEDURAL BACKGROUND
 
 7
 Huson filed a complaint in district court alleging that Vaughn and Castle Rock were liable under 42 U.S.C. § 1983 because his clearly established constitutional rights under the Fourth, Ninth, and Fourteenth Amendments were violated when Vaughn arrested Huson for theft. Huson also alleged state law claims for false arrest, false imprisonment, and malicious prosecution. Vaughn and Castle Rock moved for summary judgment on all of Huson's claims alleging there was probable cause for Huson's arrest and that Vaughn had qualified immunity. The district court denied the motion.
 
 
 8
 Vaughn then appealed the denial of his summary judgment motion to our court. We issued a summary affirmance of the district court's denial stating that "[i]t is clearly ascertainable that deposition testimony and police records, viewed in the light most favorable to appellee, showed that a reasonable police officer in appellant's position would have known that he lacked probable cause to arrest appellee because he had not ruled out another suspect." Huson v. The City of Castle Rock and Gilbert R. Vaughn, No. 90-35529 (9th Cir. Mar. 22, 1991). The case was remanded to the district court for trial.
 
 
 9
 Before trial, Vaughn and Castle Rock filed three motions in limine. The first requested that the court exclude expert testimony on the issue of probable cause to arrest and expert testimony on industry standards for criminal investigations. The second motion requested that the court exclude evidence regarding whether defendants had liability insurance. The third motion requested that the court exclude evidence regarding polygraph examinations of the original suspect and Huson. The district court partially granted the defendants' motion to exclude expert testimony, excluding evidence concerning "unprofessional bias," "ulterior motive," or that Vaughn's investigation would "shock the conscience" or was "outrageous." The district court granted the motion to exclude evidence on whether Vaughn and Castle Rock had liability insurance. The district court denied the motion to exclude evidence regarding polygraph examinations.
 
 
 10
 When Huson rested his case, Vaughn and Castle Rock moved for directed verdicts on eleven issues. The district court granted defendants' motions for directed verdict with respect to special damages and economic loss, but denied all other motions.
 
 
 11
 The jury entered a special verdict in favor of Huson on the following questions: whether Vaughn and Castle Rock violated Huson's Fourth Amendment rights by arresting Huson without probable cause; whether Vaughn is entitled to qualified immunity; whether Huson is entitled to prevail on his state law false arrest claim against Vaughn and Castle Rock; and whether Huson is entitled to prevail on his state malicious prosecution claim. The jury did not find in favor of Huson on his claims of malicious prosecution in violation of his substantive and procedural due process rights under the Fourteenth Amendment. The jury awarded Huson $200,000 in compensatory damages against Vaughn and Castle Rock, and $10,000 in punitive damages against Vaughn.
 
 
 12
 Vaughn and Castle Rock then moved for a judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b). The district court denied the motion. This appeal followed.
 
 STANDARD OF REVIEW
 
 13
 We review de novo the district court's denial of Vaughn and Castle Rock's motions for a directed verdict and for JNOV. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir.1992) (petition for certiorari pending). Our inquiry is the same as the district court's: we must determine whether the evidence, considered as a whole and viewed in the light most favorable to Huson, reasonably can support only a verdict in favor of Vaughn and Castle Rock. A directed verdict or JNOV is not warranted if there is substantial evidence supporting a verdict in favor of Huson. Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Id.
 
 
 14
 We review for abuse of discretion evidentiary rulings, and we will not reverse such rulings absent some prejudice. McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.) cert. dismissed, 113 S.Ct. 399 (1992).
 
 
 15
 We consider jury instructions as a whole to determine whether they are misleading or inadequate. Oviatt v. Pearce, 954 F.2d 1470, 1480 (9th Cir.1992). "The trial judge has substantial latitude in tailoring the instructions," and we review for an abuse of discretion the formulations adopted by the court. Id. An error instructing the jury in a civil case does not require reversal if it more probably than not is harmless. Caballero v. Concord, 956 F.2d 204, 205 (9th Cir.1992).
 
 DISCUSSION
 A. Probable Cause
 1. Directed Verdict and JNOV
 
 16
 Vaughn and Castle Rock contend that, as a matter of law, there was probable cause to arrest Huson and therefore, judgment should be awarded in their favor. We disagree.
 
 
 17
 An officer has probable cause to arrest where the totality of the facts and circumstances within the officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant an officer of reasonable caution and prudence in believing that the person to be arrested has committed a crime. Barry v. Fowler, 902 F.2d 770, 773 (9th Cir.1990).
 
 
 18
 In the case at bar, viewing the evidence in the light most favorable to Huson, we cannot say that the only reasonable conclusion was that Vaughn had probable cause to arrest Huson. When Vaughn arrested Huson, Vaughn determined that probable cause existed based on the following information: Huson was behind on his house payments; Huson made some cash deposits after the theft that, according to a bank teller, were unusual for Huson; Huson had turned down the opportunity to lock the money in the city vault on Saturday night; and Huson did not meet in the mornings for coffee with Lions Club members as often as he had in the past. But evidence presented to the jury also showed that Huson's bank records, which Vaughn reviewed, revealed that the deposits were not unusual. The evidence also showed that Huson returned the money to the concession stand Sunday morning and it was returned to him Sunday evening by another Lions Club member. The theft occurred Sunday night. Finally, the evidence showed that, after the theft, Huson remained active in Lions Club activities throughout the summer before his arrest.
 
 
 19
 Vaughn also points to evidence that he had ruled out the juvenile boarder as a suspect before arresting Huson. Vaughn, however, apparently accepted the boarder's statement that he did not take the money even though Vaughn did not find the juvenile boarder completely credible. Vaughn also knew that the police report showed that Huson reported having had previous theft problems with the boarder. And Vaughn did not obtain a criminal history of the boarder, which would have revealed several burglaries and thefts.
 
 
 20
 In addition, Vaughn produced evidence that, before the arrest, Deputy Prosecuting Attorney Furman advised Vaughn that probable cause existed to arrest Huson. But there was also evidence that Vaughn had not revealed all the relevant information to Furman before consulting with him on the arrest. For example, Vaughn did not tell Furman that the juvenile boarder declined to take a polygraph examination.
 
 
 21
 As the foregoing indicates, there was substantial evidence to support the jury's special verdict that "the constitutional rights of plaintiff Huson [were] violated by his arrest without probable cause by defendant Vaughn...." [ER 45]
 
 2. Expert Testimony
 
 22
 Vaughn and Castle Rock contend that the expert testimony presented by Huson improperly addressed the issue whether Vaughn had probable cause to arrest Huson. They further contend that the expert testimony did nothing more than tell the jury what result to reach and that this was improper, citing the advisory committee's note to Fed.R.Evid. 704.[1]
 
 
 23
 Rule 704 permits opinion testimony that embraces an ultimate issue to be decided by the trier of fact. Fed.R.Evid. 704(a); United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 488 U.S. 836 (1988), and cert. denied, 485 U.S. 836 (1988). "An ultimate issue opinion by a properly qualified expert should not be excluded except in the extreme case where the expert's opinion is inherently misleading or unfairly prejudicial." Kinsey, 843 F.2d at 389.
 
 
 24
 Vaughn and Castle Rock, refer us to three passages of expert testimony "that constituted legal conclusions on the precise legal issue in this case...." [Blue Brief at 21; ER 66-67, 75-76 and Tr III 419-21 (the transcript pages not available in the ER will be faxed to Judge Goodwin and Judge Schroeder) ]. We find nothing in these passages that would lead us to conclude that the expert testimony was inherently misleading or unfairly prejudicial. The district court did not abuse its discretion in permitting expert testimony on the issue of probable cause.
 
 
 25
 Vaughn and Castle Rock next argue that the district court erred by permitting expert testimony regarding whether certain evidence would have been material to the prosecutor's determination that there was probable cause. They refer us to one passage of expert testimony in support of their argument. [ER 505-507.]
 
 
 26
 This testimony was probative because Vaughn rested his determination that there was probable cause partly on the fact that the deputy prosecuting attorney, Furman, told Vaughn before the arrest that probable cause existed. This evidence goes to the issue of probable cause and, again, opinions on this issue were permissible. We see nothing in this additional expert testimony that is inherently misleading or unfairly prejudicial. Therefore, the district court did not abuse its discretion by allowing this testimony.
 
 3. Probable Cause Jury Instruction
 
 27
 The district court instructed the jury that "[t]he existence of probable cause must be determined at the time that the arrest is made. Facts learned or evidence obtained after the arrest or as a result of an arrest cannot be used to support probable cause, unless they were known to the officer at the moment the arrest was made." Instruction 14A. [ER 41]. Vaughn and Castle Rock contend that this instruction was not complete, that it should have included a statement that information obtained after the arrest cannot be used to negate probable cause.
 
 
 28
 While, arguably, the instruction proffered by Vaughn and Castle Rock is a correct statement of the law, none of the cases cited by the appellants stand for the proposition that such an instruction is required. See, e.g., Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1298 (9th Cir.1988); United States v. Martin, 509 F.2d 1211, 1213 (9th Cir.), cert. denied, 421 U.S. 967 (1975).
 
 
 29
 We do not find that the instructions given were misleading or inadequate. Therefore, the district court did not abuse its discretion by refusing to add Vaughn and Castle Rock's requested statement to the instruction given.
 
 B. Qualified Immunity
 
 30
 Vaughn contends that, even if he mistakenly believed he had probable cause to arrest Huson, he is entitled to the defense of qualified immunity because a reasonable officer in his position could have believed that probable cause existed.[2]
 
 
 31
 We summarily upheld the district court's denial of summary judgment on the issue of qualified immunity. Huson, No. 90-35529 at 2. The district court later denied Vaughn's motion for a directed verdict on this issue and submitted the following question to the jury: "Is the defendant Vaughn entitled to qualified immunity?" The court also instructed the jury on the qualified immunity defense.[3]
 
 
 32
 We recently held in Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993), that qualified immunity is not in itself a factual issue that would preclude summary judgment, but if a genuine issue of underlying fact exists, the determination cannot be made until the facts have been developed at trial. In this case, genuine issues of fact precluded summary judgment in favor of Vaughn based on qualified immunity. Huson, No. 90-35529 at 2. The district court, therefore, properly submitted the issue to the jury. Thus, we review the denial of Vaughn's motions for directed verdict and JNOV under the standards enunciated above.
 
 
 33
 Our previous discussion about the lack of probable cause is dispositive of the qualified immunity question. See Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 706 (9th Cir.1989). Substantial evidence supported the jury's determination that no reasonable officer in Vaughn's position could have believed there was probable cause to arrest Huson for theft in the second degree. Vaughn contends that he had no duty to further investigate the theft, but qualified immunity is inappropriate if a reasonable officer would have made further inquiry before effecting a warrantless arrest. Merriman v. Walton, 856 F.2d 1333 (9th Cir.1988), cert. denied, 491 U.S. 905 (1989).
 
 C. Punitive Damages
 
 34
 Vaughn argues that the district court erred by denying his motions for directed verdict and JNOV on the issue of punitive damages because Huson did not present sufficient evidence of the types of conduct that warrant punitive damages.
 
 
 35
 Punitive damages are recoverable under § 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others. Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir.1993).
 
 
 36
 Viewed in the light most favorable to Huson, we cannot conclude that the evidence can support only a verdict in favor of Vaughn on the issue of punitive damages. See Gillette, 979 F.2d at 1346. Huson presented evidence that Vaughn acted with reckless and callous indifference to Huson's constitutional rights by conducting an incomplete investigation of the prime suspect, the juvenile boarder. In addition, Vaughn did not give the deputy prosecuting attorney a complete picture of the facts before the prosecuting attorney told Vaughn that probable cause existed to arrest. Furthermore, there was evidence that, at the time of the arrest, Vaughn told Huson to either confess or go to jail and that Vaughn laughed at Huson during his booking. Finally, Vaughn's statements to the press after the prosecutor indicated he was going to dismiss the charges against Huson reflect Vaughn's personal animosity towards Huson. At that time, Vaughn stated that a dismissal "did not prove the former mayor is innocent" and that "a dismissal is not the same as an acquittal."
 
 
 37
 Thus, we find that there was substantial evidence supporting a verdict on punitive damages in favor of Huson.
 
 D. Municipal Liability
 
 38
 Castle Rock contends that the district court should have determined that, as a matter of law, the City was not liable on Huson's claims.
 
 
 39
 Under § 1983, municipal liability may be imposed only if Huson establishes that his injuries were the result of an "official policy." See Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir.1989). "A decision properly made by a local government entity's authorized decisionmaker--i.e., an official who 'possesses final authority to establish [local government] policy with respect to the [challenged] action'--may constitute official policy." Id. (alteration in original) (quoting Pembauer v. City of Cincinnati, 475 U.S. 468, 481 (1986) (plurality opinion)). "Furthermore, a single action by the final decisionmaker may be sufficient to establish that a municipality has a policy that infringes on a person's constitutional rights." Los Angeles Police Protective League v. Gates, 907 F.2d 879, 889 (9th Cir.1990). Whether an official had final policy-making authority is a question of state law to be decided by the court before the case is submitted to the jury. Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1988).[4]
 
 
 40
 The district court gave the jury the following instruction on municipal liability:
 
 
 41
 If you find that defendant Vaughn is liable under plaintiff's Washington State law false arrest and/or malicious prosecution claims, then the Court will automatically enter judgment in plaintiff's favor also against defendant City of Castle Rock because it employed defendant Vaughn at the time in question.
 
 
 42
 However, a finding of liability against defendant Vaughn on one or more of plaintiff's Section 1983 claims does not mean that the Court will automatically enter judgment against defendant City of Castle Rock on those claims. Federal law provides that a judgment under Section 1983 may only be entered against defendant Castle Rock if the violation of plaintiff's constitutional rights occurred pursuant to an official policy or practice of the City of Castle Rock.
 
 
 43
 A municipality is liable under Section 1983 for a deprivation of civil rights only if such an element described in Instruction 14 is proven and the deprivation of civil rights was caused or inflicted pursuant to official policy.
 
 Official policy is:
 
 44
 1. A policy statement or decision that is officially promulgated or made by the municipality's lawmaking officers or by a policy making official; or
 
 
 45
 2. An unconstitutional act or ratification of an unconstitutional act by a policy making official where the decision maker possesses final authority to establish municipal policy with respect to the action taken; or
 
 
 46
 3. An unconstitutional act resulting from a policy maker's reckless disregard for or deliberate indifference to the rights of plaintiff.
 
 
 47
 "Deliberate indifference" is an act or failure to act that is done with a callous indifference or thoughtless disregard of the consequences of one's actions or failure to act on the rights of others.
 
 
 48
 Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as defined above.
 
 
 49
 Instruction No. 21. [ER 43]
 
 
 50
 On appeal, Castle Rock does not challenge the substance of this instruction or the law applied by the district court. Rather, Castle Rock argues that the issue of municipal liability should not have been submitted to the jury because Huson failed to present any evidence that would establish municipal liability under any of the three definitions of official policy in the instruction. We therefore review the district court's denial of Castle Rock's motions for directed verdict and JNOV under the standards enunciated above.
 
 
 51
 Viewing the evidence in the light most favorable to Huson, we cannot say that it supports only the conclusion that municipal liability is inappropriate. Huson presented evidence that could reasonably support the conclusion that Vaughn, as chief of police and a final policy-maker for Castle Rock, acted with callous indifference or thoughtless disregard of the consequences of his arrest of Huson without a warrant and without probable cause. This would support municipal liability under the third definition of "official policy" in the jury instruction.
 
 E. Other Evidentiary Issues
 
 52
 1. Expert Testimony Re Professional Standards of Conduct
 
 
 53
 Vaughn and Castle Rock contend that the district court improperly allowed Huson's law enforcement expert to testify that Vaughn recklessly and intentionally disregarded professional standards in conducting his investigation of the theft. [ER 73-75]
 
 
 54
 This argument is without merit. That Vaughn acted recklessly and intentionally were ultimate issues to be decided by the jury. As noted above, Rule 704 permits expert opinion testimony on such ultimate issues. Moreover, Rule 702 permits expert opinion testimony comparing the conduct of the parties to the industry standard. See Davis v. Mason County, 927 F.2d 1473, 1484-85 (9th Cir.) (admission of opinion testimony of an expert--the same one involved in this case--on the issue of recklessness was not an abuse of discretion), cert. denied, 112 S.Ct. 275 (1991). The district court did not abuse its discretion by admitting the expert testimony.
 
 
 55
 2. Evidence Re Refusal to Take Polygraph Examination
 
 
 56
 Finally, Vaughn and Castle Rock contend that the district court abused its discretion by admitting evidence that the juvenile boarder, suspected of committing the theft, declined to take a polygraph examination after being interviewed by Vaughn. They argue that this evidence was irrelevant and prejudicial.
 
 
 57
 Under Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Fed.R.Evid. 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."
 
 
 58
 Evidence that the juvenile boarder refused to take a polygraph examination is relevant to show what information Vaughn had before he consulted with the prosecuting attorney and before he arrested Huson. That information has some tendency to show that Vaughn did not act reasonably.
 
 
 59
 In the cases cited by Vaughn and Castle Rock for the proposition that the polygraph evidence is prejudical, the evidence was being used against the party who refused to take the polygraph examination. See, e.g., Aetna Ins. Co. v. Barnett Bros., Inc., 289 F.2d 30, 34 (8th Cir.1961). The danger of unfair prejudice to Vaughn, who was not the subject of the refusal to take a polygraph examination, does not outweigh the probative value of the polygraph evidence. The district court did not abuse its discretion by admitting this evidence.
 
 AFFIRMED.[5]
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Fed.R.Evid. 704 provides:
 Rule 704. Opinion on Ultimate Issue
 (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
 (b) No expert testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone.
 
 
 [2]
 Whether a reasonable officer in Vaughn's position could have believed that probable cause existed is the second part of the two-part qualified immunity analysis. Anderson v. Creighton, 483 U.S. 635 (1987). The first part, whether the right allegedly violated was clearly established, is not disputed by the parties
 
 
 [3]
 The court gave the following instruction to the jury, which was stipulated to by the parties, on the qualified immunity defense:
 If you find that plaintiff has proved his Fourth Amendment claim of a warrantless arrest without probable cause, then you must consider the defendant Vaughn's defense of qualified immunity. This defense does not apply to plaintiff's substantive and procedural due process claims described in Instruction No. 15.
 This is an affirmative defense, and the defendant has the burden to prove this defense by a preponderance of the evidence.
 Defendant is entitled to a judgment in his favor on the Fourth Amendment claim if he establishes by a preponderance of the evidence that a reasonable officer in his position could have believed that probable cause existed to conclude that plaintiff had committed the crime of theft in the second degree. The standard to be applied is an objective one. The subjective state of mind of the defendant is not relevant.
 Instruction No. 14D.
 
 
 [4]
 The district court did not make an express finding that Vaughn was a final policy-maker, but he implicitly made such a finding by submitting the municipal liability issue to the jury. The district court did not separately instruct the jury on the definition of a policy-making official
 
 
 [5]
 Under 9th Cir.R. 39-1.6, Huson's request for attorney's fees shall be filed within thirty days of the entry of this disposition. Under Rule 39-1.7, Vaughn and Castle Rock's opposition shall be filed within fourteen days after service of the request