James GILLETTE, Plaintiff–Appellee,

v.

Duane DELMORE, Defendant,

and

City of Eugene, Defendant–Appellant.

No. 91–35142.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1992.

Decided Nov. 10, 1992.

---

1. *Harper Group and Includible Subsidiaries v.* *Commissioner*, 96 T.C. 45 (1991).

William F. Gary and Glenn Klein, Harrang Long Watkinson Arnold & Laird, Eugene, Or., for defendant-appellant.

Michael V. Phillips, Johnson, Clifton, Larson & Bolin, Eugene, Or., for plaintiff-appellee.

Before: WALLACE, Chief Judge, GOODWIN, Circuit Judge, and CROCKER,* District Judge.

PER CURIAM:

The City of Eugene (City) appeals from the district court's judgment following a jury trial in favor of James Gillette, a former City fire fighter, in his 42 U.S.C. § 1983 suit. Gillette argued that he was suspended from his employment in violation of his First Amendment speech rights. The central issue on appeal is whether, for purposes of municipal liability under section 1983, the City Manager made city policy by declining to overrule a subordinate's discretionary decision to fire Gillette. We hold that such conduct does not give rise to municipal liability. We also conclude that municipal liability does not arise in this case because Gillette was not suspended pursuant to a city policy or custom. Accordingly, we reverse the district court's denial of the City's motion for judgment notwithstanding the verdict (JNOV).

## I. FACTS AND PROCEDURAL BACKGROUND

On May 31, 1983, Battalion Chief Duane Delmore notified Gillette that he was charged with three incidents of misconduct that warranted his termination. Gillette was suspended with pay and informed of his right to respond to the charges.

The focus of this litigation is the third incident, an emergency medical call on May 19, 1983. In that incident, Gillette was dispatched along with two other fire fighters, two fire department medics, and two police officers to the home of James Dunsmoor. The police officers and three of the fire department personnel forcibly restrained Dunsmoor, who appeared to be intoxicated and was profanely ordering the fire fighters and police officers to leave. Dunsmoor was handcuffed, bound to a stretcher, and transported to a hospital. According to the testimony at trial, Gillette told the acting fire captain, Mr. Wallenius, that he believed "[t]his is not being handled very well" and that "[w]e're not doing this right." Gillette also told bystanders in Dunsmoor's house that the situation was not being handled properly, but he urged them to remain calm. Gillette testified that after Dunsmoor was on the stretcher,

---

* Honorable M.D. Crocker, United States District Judge, Eastern District of California, sitting by designation.

Dunsmoor spit on a police officer's shoes, whereupon another officer, Heide, smashed Dunsmoor's head three or four times against an aluminum bar at the end of the stretcher. According to Gillette, when he was outside the house he said to Officer Heide, "We may as well let him die on his own rather than us kill him."

After hearing Gillette's response to the misconduct charges, Battalion Chief Delmore terminated Gillette, effective June 7, 1983. Gillette appealed Delmore's decision to Fire Chief Everett Hall. Hall reviewed de novo the disciplinary charges and Gillette's employment record, conducted a brief hearing, and affirmed Gillette's termination. Gillette then filed a formal grievance pursuant to a collective bargaining agreement between the City and the fire fighters' union. The matter proceeded to arbitration, and the arbitrator determined that Gillette should be reinstated, without back pay or benefits, on January 11, 1984. Thus, the discipline ultimately imposed on Gillette was a seven-month suspension without pay. Gillette's employment was again terminated in June of 1984 for unrelated reasons.

On May 31, 1985, Gillette filed suit under 42 U.S.C. § 1983 against individual city employees and the City itself alleging several constitutional violations. The individual defendants were dismissed from the case, and the district court granted summary judgment in favor of the City on September 15, 1986, on the ground that Gillette's speech during the Dunsmoor incident was not constitutionally protected. On appeal, we held that Gillette's comments at the emergency call scene involved a matter of public concern. *Gillette v. Delmore*, 886 F.2d 1194 (9th Cir.1989) (*Gillette I*). We concluded that triable issues of fact remained: whether Gillette's interest in commenting on matters of public concern outweighed the City's interest in promoting the efficient delivery of public services, *see Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), and whether the City would have terminated Gillette in any event based on the other misconduct charges, *see Allen v. Scribner*, 812 F.2d 426, 433–36 (9th Cir.1987). We therefore

affirmed in part, reversed in part, and remanded for trial on the issue of whether Gillette's First Amendment rights were violated when he was disciplined for his comments at the call scene. *Gillette I*, 886 F.2d 1194.

A United States Magistrate tried the case to a jury. Gillette sought recovery for emotional distress he said he suffered during the seven months between his termination and reinstatement. The City was the only remaining defendant. Gillette attempted to establish municipal liability under 42 U.S.C. § 1983, which requires the plaintiff to establish that his constitutional rights were violated as a result of a policy or custom of the municipality. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) (*Monell*). The jury found the City liable and awarded Gillette $60,000 in general damages and $18,006 in special damages for lost wages. The City moved for JNOV and, in the alternative, for a new trial. The City argued first that Gillette had produced no evidence that the City Manager or City Council had adopted or ratified a policy or custom that caused Gillette's alleged unconstitutional termination. The City also argued for a new trial on the ground that the district court had erred in excluding evidence relating to other sources of emotional distress in Gillette's life after Gillette had "opened the door" by testifying to emotional distress he suffered after the seven-month period between his termination and reinstatement.

The district court denied the City's JNOV motion on the ground that the City Manager's acquiescence in Fire Chief Hall's decision to terminate Gillette constituted an act of municipal policymaking for purposes of *Monell*. On the damages question, the district court found that $60,000 was an excessive award for emotional distress and that "it is likely that the jury's excessive award was based on the jury's reliance on testimony concerning plaintiff's emotional distress up to and through the time of trial." The court concluded that it had committed prejudicial error in excluding the City's proffered evidence. Rather than ordering a

new trial, however, the court offered Gillette the choice of a new trial or a remittitur reducing the general damages to $30,000. Gillette accepted the remittitur, and the City timely appealed.

## II. STANDARD OF REVIEW

■■■ We review de novo the district court's denial of the City's motions for a directed verdict and for JNOV. Our inquiry is the same as the district court's: we must determine whether the evidence, considered as a whole and viewed in the light most favorable to the nonmoving party, reasonably can support *only* a verdict for the moving party. A directed verdict or JNOV is inappropriate where there is substantial evidence supporting a verdict in favor of the nonmoving party. *See The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir.1988). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987). We review for an abuse of discretion the district court's decision on a motion for a new trial. *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1451–52 (9th Cir.1988).

## III. MUNICIPAL LIABILITY

On appeal, the City does not challenge the jury's findings that Gillette's comments during the May 1983 emergency call were constitutionally protected and that Gillette was terminated because of those comments. Rather, the City argues that it did not *cause* a deprivation of Gillette's constitutional rights because Gillette was not fired pursuant to an official policy or custom of the City.

### A. Monell *and its progeny.*

42 U.S.C. § 1983 provides, in part, that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Monell*, the Supreme Court held that municipalities are "persons" subject to damages liability under section 1983 where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." 436 U.S. at 691, 98 S.Ct. at 2036. The Court made clear that the municipality itself must cause the constitutional deprivation and that a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior. Id.; accord City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

■■■ A section 1983 plaintiff may establish municipal liability in one of three ways. First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (*Jett*) (internal quotation omitted); *accord Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) (*Pembaur*); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir.1983). Whether a particular official has final policy-making authority is a question of state law. *See Jett*, 491 U.S. at 737, 109 S.Ct. at 2723; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion) (*Praprotnik*). Third, the plaintiff may prove that an official with final policy-making

authority ratified a subordinate's unconstitutional decision or action and the basis for it. *See Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926; *Hammond v. County of Madera*, 859 F.2d 797, 801–02 (9th Cir.1988) (*Hammond*).

### B. *Proof of policy or custom.*

At trial, Gillette claimed that he was disciplined pursuant to a policy or custom that Eugene fire fighters should "remain silent, cooperate, and complain later" and that his First Amendment rights were violated as a result of the application of this policy or custom. Gillette claimed that municipal liability could be imposed under each of the three theories described above. Specifically, he claimed: (1) that the violation of his constitutional rights resulted from city policy because the disciplinary sanction imposed by Battalion Chief Delmore and Fire Chief Hall was "ratified" by City Manager Michael Gleason, an official policymaker; (2) that the City had a long-standing, unstated policy or custom of disciplining employees who publicly criticized public safety operations; and (3) that Hall was an official policymaker for the City and that his actions therefore were attributable to the City. Before trial, the district court ruled that as a matter of Oregon law only the City Manager and City Council were official policymakers for purposes of section 1983. Thus, only Gillette's first and second theories remained viable when the case went to the jury.

### 1. *"Ratification" of Gillette's discipline.*

■ In denying the City's motion for JNOV, the district court reasoned that "a City Manager may make city policy by acquiescing in discipline imposed on a city employee.... [A] City Manager may be held to have 'affirmatively commanded' a constitutional violation by failing to overrule the imposition of a disciplinary sanction." The court held that municipal liability had been established because "[t]he City Manager here was aware of the imposition of plaintiff's discipline and did not overrule it, but instead defended the sanction in a formal arbitration proceeding." We disagree with the district court's reasoning.

In *Pembaur*, the Supreme Court held that a single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations. *See* 475 U.S. at 480–81, 106 S.Ct. at 1298–99. There must, however, be evidence of a conscious, affirmative choice. Municipal liability under section 1983 attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. at 1300 (plurality opinion); *accord City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives.").

Gillette contends that the City Manager, by not countermanding the Fire Chief's final decision to terminate Gillette and by not objecting to the hiring of counsel to represent the City in the arbitration of Gillette's grievance, ratified the Fire Chief's decision and thereby effectively made employment policy. Gillette relies primarily on the statement in *Praprotnik* that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." 485 U.S. at 127, 108 S.Ct. at 926.

■ The cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983. *See Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 926 (observing that "[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability"). In *Praprotnik*, the Court considered whether a policymaker's deferential review of a subordinate's discretionary decision constituted a delegation

of policy-making authority. The plurality concluded that there was no delegation and thus no basis for section 1983 liability, but observed that it would be a different case "if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker ... [or] if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Id.* at 130, 108 S.Ct. at 927–28.

Gillette's evidence is not sufficient under *Pembaur* or *Praprotnik* to establish section 1983 liability based on the City Manager's alleged acquiescence in Gillette's termination. *Pembaur* requires that an official policymaker make a deliberate choice from among various alternatives to follow a particular course of action. *See Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir.1992), *quoting Pembaur,* 475 U.S. at 483–84, 106 S.Ct. at 1300. Likewise, *Praprotnik* requires that a policymaker approve a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision. *See Bouman v. Block,* 940 F.2d 1211, 1231 (9th Cir.) *(Bouman)* (citing *Praprotnik),* cert. denied, —— U.S. ——, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991). Gillette has produced no evidence of affirmative or deliberate conduct by City Manager Gleason that may be said to have ratified Chief Hall's decision to fire Gillette.

Gillette relies on *Hammond,* 859 F.2d at 802–03, for the proposition that a policymaker's ratification of a subordinate's decision can occur long after the original decision and still give rise to municipal liability. *Hammond,* however, is inapposite because in that case the relevant policy-making body played a significantly more active role than the City Manager played in Gillette's suspension. *See id.* at 802–03 (holding the county liable for unconstitutional trespasses on plaintiffs' land where the county board "actively participated in the deprivation of appellant's property rights").

Gillette also points to our recent statement in *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991), that "evidence that [Police] Chief Gates, an authorized policymaker on police matters, made, or ratified a decision that deprived plaintiffs of their constitutional rights would suffice for official liability under *Pembaur." Id.* at 646 (citation omitted). This excerpt from *Larez* merely recites the rule that proof of ratification by an official policymaker will trigger municipal liability. It does not alter our conclusion that City Manager Gleason's inaction in Gillette's case does not amount to "ratification" under *Pembaur* and *Praprotnik.*

At most, Gillette has established that the City Manager did not overrule a discretionary decision by the Fire Chief and did not object to the retention of counsel to represent the City in an arbitration proceeding pursuant to a collective bargaining agreement. The Fire Chief did not cast his decision to discipline Gillette in the form of a policy statement, and the City Manager's testimony that he did not object to hiring counsel for Gillette's arbitration is at least equally consistent with a general policy of routinely hiring lawyers to defend the City in all litigation or labor grievance proceedings. There is no evidence that the City Manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it.

The fact that the City Manager did not overrule the Fire Chief in this instance thus cannot form the basis of municipal liability under section 1983. To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law under the guise of *Pembaur's* "single decision" rule. We decline to endorse this end run around *Monell.*

2. *Evidence of a preexisting custom or practice.*

 Gillette also argued at trial that he was disciplined pursuant to a preexisting policy or custom of the City—namely, that public safety employees wishing to criticize emergency operations should "be silent, cooperate, and complain later" or risk disciplinary reprisals. To prevail on

this theory, Gillette had to prove "the existence of a widespread practice that ... is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (internal quotations omitted). A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded. *See McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir.1986). No such evidence was produced by Gillette. Nor did Gillette present evidence of a pattern of similar dismissals in violation of employees' First Amendment rights. In fact, there is no evidence in the record that any other City employee has ever been disciplined for publicly criticizing the handling of an emergency call.

Gillette also failed to present evidence that the City Manager or the City Council helped formulate or were aware that any such informal policy existed. When questioned at trial, the City Manager flatly denied that the City had a "work now—grieve later" policy. Additionally, Gillette did not present any evidence as to how long this alleged informal policy existed, which is a crucial element of the inquiry given the Supreme Court's emphasis that the practice be *"so* permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (emphasis added) (internal quotations omitted). Fire Chief Hall did testify that remaining silent during an emergency and complaining later was "a practice [among fire fighters] that we want to have followed." However, to infer from this statement that the City had an informal policy of disciplining or terminating fire fighters who did not follow this practice requires too large a leap. We therefore conclude that a reasonable jury could not have found that Gillette was terminated pursuant to an informal City policy of "work now—grieve later."

3. *Was Fire Chief Hall a final policy-maker?*

Gillette also argues that the district court erred in its pretrial ruling that Fire Chief Hall was not a "policymaker" whose individual decision could be attributed to the City under *Monell, Pembaur,* and *Praprotnik.* Gillette contends that Hall had final authority with respect to disciplining fire fighters and had been delegated de facto authority to establish personnel policy within the Fire Department. *See Jett,* 491 U.S. at 737, 109 S.Ct. at 2723 (holding that district courts must identify official policymakers based on "state and local positive law, as well as 'custom or usage' having the force of law") (internal quotations omitted); *see also Bouman,* 940 F.2d at 1231 (remanding to the district court for a determination whether the county Board of Supervisors had delegated to the Sheriff the authority to establish final employment policy within the Sheriff's Department). We review the district court's ruling on this issue de novo. *Brooks v. Hilton Casinos, Inc.* 959 F.2d 757, 759 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992).

In *Pembaur,* the Court held that under certain circumstances a municipality may be held liable for a single decision by a municipal policymaker. 475 U.S. at 480, 106 S.Ct. at 1298. Municipal liability does not attach, however, unless "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82, 106 S.Ct. at 1299 (footnote omitted); *accord Collins v. City of San Diego,* 841 F.2d 337, 341 (9th Cir.1988). (*Collins*). Thus, in a situation factually similar to the one presented here, the plurality in *Pembaur* pointed out that the personnel decisions of a County Sheriff, who has discretion to hire and fire employees but is not the county official responsible for establishing county employment policy, could not be attributed to the municipality. *Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12; *see also Collins,* 841 F.2d at 341–42 (holding that the actions

of a police sergeant with discretion to recommend hiring, firing, and discipline of employees could not be attributed to the municipality because the sergeant was not responsible for establishing final employment policy).

Here, Fire Chief Hall possessed the discretionary authority to hire and fire employees. This alone, however, is not sufficient to establish a basis for municipal liability. Municipal liability could be imposed on the basis of Hall's actions only if he was responsible for establishing the City's employment policy. In making this determination, "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 925. The district court held that the Eugene City Charter and ordinances grant authority to make City employment policy only to the City Manager and the City Council. Gillette points to neither law nor evidence that suggests the district court erred in relying on or interpreting the applicable municipal law to determine who made final employment policy for the City. We therefore hold that the court did not err in concluding that only the City Council and City Manager were final policy makers for the City.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to Gillette, we conclude that a reasonable jury could not have found proof of municipal liability. We therefore reverse the judgment of the district court and remand with instructions to grant the City's motion for JNOV. Because we reverse the district court, it is unnecessary to reach the City's argument that the court's remittitur proposal constituted an abuse of discretion.

REVERSED AND REMANDED.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.