# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH CHARLES LASSITER; ALPHA
DORIS LASSITER,
         *Plaintiffs-Appellants,*

v.

CITY OF BREMERTON; MATTHEW
THURING; JOHN VAN SANTFORD; 1-
10 DOES; CLAIRE ALLISON
BRADLEY; CHRISTIAN C. CASAD;
JAMES T. MITCHELL; KITSAP
COUNTY,
         *Defendants-Appellees.*

No. 07-35848

D.C. No.
CV-05-05320-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
February 4, 2009—Seattle, Washington

Filed February 26, 2009

Before: Betty B. Fletcher, Pamela Ann Rymer and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge B. Fletcher

---

**COUNSEL**

David H. Smith, Garvey Shubert Barer, Seattle, Washington, for the appellants.

John E. Zehnder, Jr., Scheer & Zehnder, Seattle, Washington, for appellees Thuring and Van Santford.

Andrew G. Cooley, Keating, Bucklin & McCormack, Inc., P.S., Seattle, Washington, for appellee Kitsap County.

David P. Horton, WSBA, Law Office of David P. Horton, Inc. P.S., Silverdale, Washington, for appellees City of Bremerton and Robert Forbes.

Mark C. Jobson, Assistant Attorney General of Washington, Olympia, Washington, for appellees Bradley, Casad, and Mitchell.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Kenneth and Alpha Lassiter appeal the dismissal, by summary judgment and by jury verdict, of their lawsuit against

the City of Bremerton, the Bremerton Police Department, Bremerton Police Officers John Van Santford and Matthew Thuring, the Kitsap County Prosecutor's Office, and Kitsap County Deputy Prosecuting Attorney (DPA) James Mitchell. The Lassiters allege that their constitutional rights were violated by unlawful arrest, malicious prosecution, and failure to investigate their claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

On July 25, 2003 the Lassiters' neighbor called 911 to report disturbing noises and threats coming from the Lassiters' home. She reported hearing Mr. Lassiter apparently threatening to cut his wife's throat, and said that she thought Mrs. Lassiter was either tied up or locked in a room. The neighbor went outside of the Lassiters' home and lifted her phone to the window. The 911 recording captured a man's voice saying, "Your job is to obey me. Right now."; "I will hurt you."; and, "You're too fucking close that's it. That's your own fucking throat and you're not going to cut mine."

The 911 operator called officers Thuring and Van Santford to investigate a possible domestic violence assault. The operator told them that the male had made threats to cut the female's throat, and that the female was yelling for the male to let go of her. The officers arrived at the scene in uniform. They could hear a male inside yelling.[1] They went to the door and knocked at least three different times, announcing themselves as police officers and directing the occupants to come to the door. Finally Mrs. Lassiter came to the door, peered out from behind it, and said there was no problem and there was nobody else in the house.

---

[1] The police officers told the Lassiters and stated in their reports that they heard a male voice yell, "Stay away from the window and don't say anything." The Lassiters allege that this is a lie and that Mr. Lassiter never said that. This court has not relied upon this disputed fact in reaching its decision.

The officers entered the house and encountered Kenneth Lassiter standing between the living room and the kitchen. As the officers entered (or just prior), Mr. Lassiter activated a tape recorder. From that moment on, the verbal exchange was captured on tape.

> Van Santford: What's going on?

> Kenneth Lassiter: Nothing.

> Van Santford: Nothing? We're standing out here. You're yelling and screaming all over town. Why don't you have a seat here for me?

> Kenneth Lassiter: No. I'm not here to discuss this with you.

> Van Santford: Okay. Have a seat. We're investigating a possible assault, okay? We're not leaving.

> Kenneth Lassiter: Ahhh. . . .

> Van Santford: Have a seat here. Sir, I'm not gonna tell you again. [*.393 second erasure in tape*] We're not playing games with you.

> Kenneth Lassiter: Ah . . . who are you? Hold it!

> Van Santford: I'm a police officer.

> Kenneth Lassiter: No . . . Get your hands off me. What are you doing?

At this point, Van Santford had placed his hand on Kenneth Lassiter, ostensibly to guide him to a chair. But Mr. Lassiter reacted and grabbed the officer's arm, at which point Van Santford pushed him to the floor and handcuffed him. Mrs. Lassiter protested the treatment of her husband, repeatedly

saying, "This is our problem." The officers took Mr. Lassiter to the county jail, booking him for assault, obstructing a police officer, and resisting arrest. They left Mrs. Lassiter at home, but their report requested that she as well as Mr. Lassiter be charged with obstruction of a police officer.

The parties dispute several facts involved in the incident. The Lassiters dispute whether Mr. Lassiter was moving towards the kitchen as the officers told him to sit down. They also dispute whether Mrs. Lassiter physically interfered with the officers' attempt to control Mr. Lassiter.[2] Finally, in their reports, both officers stated that they repeatedly told Mr. Lassiter to stop or to stop and sit down. The tape reveals that what the officers said repeatedly was "sit down." It is possible, however, that the brief gap on the tape erased Van Santford's command to "stop."

On July 28, 2003 the Kitsap County Prosecutor's Office charged both of the Lassiters with obstruction of a police officer, and Mr. Lassiter with resisting arrest. The prosecuting attorney was defendant Claire Bradley.[3] This criminal prosecution was still pending over a year later when the Lassiters filed a claim for damages against the City of Bremerton. In a letter dated October 15, 2004, the Lassiters revealed the existence of the tape, and claimed that it proved that officers Van Santford and Thuring had committed perjury and false swearing in their reports. This allegation was based principally on the difference between the command to "stop" as narrated in the officers' reports, and the commands to "sit down" as heard on the tape. Three days later, the criminal prosecutions against the Lassiters were dismissed.

---

[2]The transcript of the tape recording shows continual verbal protests by Alpha Lassiter, and repeated requests by the officers that she calm down and sit down.

[3]The Lassiters have not appealed the dismissal of their claim against DPA's Bradley or Casad.

The Chief of Police, defendant Robert Forbes, referred the allegations against the officers to the Washington State Patrol for an independent investigation. He also placed both officers on administrative leave pending the outcome of the investigation. In December 2004, the State Patrol issued its report clearing the officers of false swearing and perjury. The report also revealed that the tape had been altered and identified a .393 second gap where officer Van Santford may have used the word "stop." Chief Forbes reinstated the officers, and informed them that the department would not pursue an internal investigation.

On May 16, 2005 the Lassiters filed the instant lawsuit against the City of Bremerton and eight other defendants. Nine days later Kenneth Lassiter was charged with tampering with physical evidence, obtaining a signature by deception or duress,[4] and obstructing a law enforcement officer. Deputy prosecutor James Mitchell had taken over for Claire Bradley; he signed the Certification for Determination of Probable Cause which accompanied the charges. This prosecution was subsequently dismissed for lack of evidence.

In this case, the district court dismissed on summary judgment all state law claims against Kitsap County, Police Chief Forbes, and the individual prosecutors. All federal claims against the City were also dismissed. The court submitted the state law claims against the City and officers Thuring and Van Santford for excessive force, assault and battery, and infliction of emotional distress to the jury. It had previously ruled in a summary judgment order that the officers were entitled to qualified immunity for their warrantless entry into the Lassiters' home, and that the arrests of Mr. and Mrs. Lassiter were lawful. Accordingly, the court instructed the jury that it should assume the entry into the Lassiters' home and the

---

[4]The theory of this charge is that Kenneth Lassiter had obtained dismissal of the first criminal prosecution by use of false evidence; i.e., deception.

arrest of Mr. Lassiter were lawful. The jury returned a verdict for the defendants on all remaining claims.

## DISCUSSION

We review a district court's summary judgment orders de novo. *Mackinney v. Nielsen*, 69 F.3d 1002, 1004 (9th Cir. 1995). We give deference to a jury verdict, reviewing all evidence on appeal of those claims "in the light most favorable to the verdict." *Larez v. City of Los Angeles*, 946 F.2d 630, 634 (9th Cir. 1991).

A.   Probable Cause to Arrest Mr. Lassiter

The heart of the Lassiters' case is their 42 U.S.C. § 1983 claim that the police arrested Kenneth Lassiter for obstruction without probable cause, violating his Fourth Amendment rights. We agree with the district court that the police did have probable cause, and affirm the dismissal of this claim.

**[1]** Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). The crime of obstructing an officer has four essential elements: 1) an action or inaction that hinders, delays, or obstructs the officers; 2) while the officers are in the midst of their official duties; 3) the defendant knows the officers are discharging a public duty; 4) the action or inaction is done knowingly. WASH. REV. CODE § 9A.76.020.

**[2]** Regardless of whether Van Santford said the word "stop" and whether Kenneth Lassiter physically moved toward the kitchen, the undisputed facts are sufficient to conclude that the officers had probable cause. They entered a potential domestic violence scene with information that Mr. Lassiter had threatened to cut his wife's throat. The couple was obviously reluctant to open the door, and when Alpha

Lassiter eventually did open the door she attempted to hide herself behind it and lied to the officers that no one else was home. Given this background, it was reasonable for the officers to insist that Kenneth Lassiter sit down in the living room, away from any possible weapons, before the police could carry out their duty to ensure that Mrs. Lassiter was not in harm's way. But Mr. Lassiter's conduct made it impossible for the police to carry out their duty. More than just a momentary noncompliance with police orders, his conduct had the practical effect of precluding the officers from securing the scene and investigating a possible assault. Mr. Lassiter's conduct is therefore distinguishable on this critical issue from cases in which we have held that no probable cause existed to arrest for an obstruction offense. *See Palmer v. Sanderson*, 9 F.3d 1433, 1437 (9th Cir. 1993) (holding that, if plaintiff agreed to answer officer's questions, accompany officer to station and submit to a breath test, "no reasonable officer could believe that there was probable cause to arrest [plaintiff] for 'obstructing a public servant,' " even when plaintiff left the scene of a traffic stop); *Mackinney*, 69 F.3d at 1006 (finding no probable cause to arrest for obstruction based on "momentary disobedience" because no real obstruction occurred). Additionally, the tape shows that Kenneth Lassiter knew that Thuring and Van Santford were police officers and that they were in his home to investigate a possible assault because they told him as much. Therefore, we agree with the district court that there remains no triable issue of material fact as to whether the officers had probable cause to arrest Mr. Lassiter for obstruction.

The Lassiters also claim that Mrs. Lassiter was unlawfully arrested for obstruction of an officer without probable cause. This claim is without merit because Mrs. Lassiter was never arrested.

Accordingly, we affirm the grant of summary judgment in favor of the officers, and hold that the district court's jury instruction on lawful arrest was not error.

## B. Malicious Prosecution

The Lassiters appeal the dismissal of their malicious prosecution claim against Deputy Prosecutor Mitchell and his employer, Kitsap County.[5] This claim stems from the second criminal prosecution of Mr. Lassiter, which charged him with tampering with physical evidence, obtaining a signature by deception or duress, and obstructing law enforcement, and was dismissed for insufficient evidence. The Lassiters aver that Mitchell signed a Certification of Probable Cause for this prosecution when there was no probable cause, in order to coerce the Lassiters into dropping their civil suit against the City.[6]

[3] Malicious prosecution has five elements under Washington law: 1) the defendant began or continued a prosecution; 2) without probable cause; 3) with malice; 4) in a proceeding terminated in the plaintiff's favor; 5) to plaintiff's injury. *Clark v. Baines*, 84 P.3d 245, 248-49 (Wash. 2004). In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citation omitted). We

---

[5]In this 42 U.S.C. § 1983 action, the Lassiters raise malicious prosecution claims under both state and federal law. The Lassiters also claim on appeal that the second prosecution violated his due process rights under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc), but we do not consider this claim because it was not raised in the district court. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

[6]A prosecutor is not entitled to absolute immunity when acting "as a complaining witness" in presenting a judge with a complaint and supporting affidavit in which the prosecutor personally attests to facts to establish probable cause to arrest. *Kalina v. Fletcher*, 522 U.S. 118, 127, 129-31 (1997). Mitchell may still be entitled to qualified immunity, but we find it unnecessary to reach this issue in light of our conclusion that there was no malicious prosecution.

agree with the district court that defendants are entitled to summary judgment on this issue, because Mitchell had probable cause to initiate the prosecution.

[4] Mitchell relied on the reports of the Washington State Patrol and of officers Thuring and Van Santford, all of which were signed under oath. The State Patrol report revealed that the tape had been altered, giving rise to probable cause for the tampering and deception charges. Further, the re-initiation of the obstruction charge was not unreasonable simply because the first prosecution was dismissed. The manipulation of the tape gave Mitchell reason to believe that the first dismissal was obtained under false pretenses and therefore might be vacated by the superior court. Finally, Mitchell's failure to notify the court that he had not yet obtained leave to refile the obstruction charge was a reasonable mistake and does not bear upon probable cause. Similarly, Mitchell's mistaken statement that Mr. Lassiter, rather than Mrs. Lassiter, opened the door was reasonable and did not affect whether his prosecution had probable cause.

Although it is doubtful that the Lassiters presented evidence of malice, it is unnecessary for us to reach this element because probable cause is an absolute defense to malicious prosecution. *Clark*, 84 P.3d at 249; *Freeman*, 68 F.3d at 1189.

[5] Accordingly, we affirm the dismissal of both the federal and state law malicious prosecution claims against Mitchell and Kitsap County.

C. Unlawful Entry

The Lassiters' briefs to this Court argued that the district court erred by instructing the jury to assume that the officers' warrantless entry into their home was lawful. However, at oral argument the Lassiters' counsel conceded that the entry was lawful. Therefore, there was no error in this jury instruction.

### D.   Failure to Investigate

The Lassiters contend that the district court erred in dismissing the excessive force and unlawful arrest claims against Chief Forbes and the City, on the grounds that the Chief condoned such behavior or ratified an official custom or policy of allowing it. As evidence of this ratification, the Lassiters cite his failure to adequately investigate their claims. The City is liable on this theory as the employer of the officers and of Chief Forbes.

**[6]** Under *Monell v. Department of Social Services*, 426 U.S. 658 (1978), the Lassiters must show that the Bremerton Police Department has a custom or policy of tolerating and allowing unlawful arrests and arrests with unreasonable force. Forbes' decision not to pursue the investigation of the Lassiters' claims does not evince such a policy. A single decision by a municipal policymaker "may be sufficient to trigger Section 1983 liability under *Monell*, even though the decision is not intended to govern future situations," but the plaintiff must show that the triggering decision was the product of a "conscious, affirmative choice" to ratify the conduct in question. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 483-84 (1986)).

**[7]** Here, Chief Forbes decided not to pursue an internal investigation after the Washington State Patrol cleared officers Thuring and Van Santford of the false swearing and perjury charges. However, his decision was also based on his conclusion that the officers had not violated Department policy. Thus, this single decision not to pursue an additional investigation into the specific arrest claims cannot be fairly characterized as an affirmative choice to ratify the alleged conduct, since he believed they had not engaged in such conduct. Moreover, the jury acquitted both officers of the excessive force charges, and on appeal the evidence regarding those claims must be viewed "in the light most favorable to the ver-

dict." *Larez v. City of Los Angeles*, 946 F.2d 630, 634 (9th Cir. 1991). The jury's verdicts thus lend support to Forbes' conclusion that the officers had not violated Department policy. Therefore, Chief Forbes is not liable on the Lassiters' claims in either his official or individual capacity. *Id.* at 645-46.

The district court's dismissal of the § 1983 claims against Chief Forbes and the City for excessive force and unlawful arrest is therefore affirmed.

## CONCLUSION

We affirm the district court's dismissal of the Lassiters' claims on summary judgment, and find no error in the court's jury instructions.

AFFIRMED.