UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

FEB 28 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LOUISA THURSTON, Plaintiff - Appellant, v. CITY OF NORTH LAS VEGAS POLICE DEPARTMENT; CITY OF NORTH LAS VEGAS; PAUL FREEMAN, Detective; ANTHONY WATKINS, Detective; MICHAEL WALLER, Sergeant; LEONARD TAYLOR, Officer; ERIC ROCKWELL, Officer; JASON SCARALE, Officer, Defendants - Appellees. | No. 12-15729 D.C. No. 2:10-cv-00516-LRH-RJJ District of Nevada, Las Vegas ORDER |

Before: NOONAN and WATFORD, Circuit Judges, and LYNN, District Judge.[*]

The memorandum disposition filed on January 9, 2014 is amended as follows:

At page 6, line 4-5, "the police department and individual officers" will be amended to read, "certain individual officers."

---

[*] The Honorable Barbara M. G. Lynn, District Judge for the U.S. District Court for the Northern District of Texas, sitting by designation.

With this amendment, Judge Noonan and Judge Lynn vote to deny the petition for rehearing and recommend denying the petition for rehearing en banc. Judge Watford votes to grant the petition for rehearing and petition for rehearing en banc.

The petition for rehearing and the petition for rehearing en banc are DENIED.

No further petitions for rehearing and petitions for rehearing en banc shall be entertained.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 28 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| LOUISA THURSTON,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>CITY OF NORTH LAS VEGAS POLICE DEPARTMENT; et al.,<br><br>        Defendants - Appellees. | No. 12-15729<br><br>D.C. No. 2:10-cv-00516-LRH-RJJ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted November 8, 2013
San Francisco, California

Before: NOONAN and WATFORD, Circuit Judges, and LYNN, District Judge.[**]

Louisa Thurston appeals the district court's grant of summary judgment

dismissing her § 1983 suit against the City of North Las Vegas ("city"), the City of

North Las Vegas Police Department ("police department"), and individual officers

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Barbara M. G. Lynn, District Judge for the U.S. District Court for the Northern District of Texas, sitting by designation.

for the unlawful seizure of her two pet dogs. In particular, Thurston alleges that members of the police department's SWAT team shot and killed her dogs during the execution of a high risk search warrant at her home in violation of the Fourth and Fourteenth Amendments. The defendants moved for summary judgment on qualified immunity grounds. The district court held that, under the circumstances, the police officers acted reasonably in shooting the dogs, and thus did not violate Thurston's Fourth Amendment rights as a matter of law. Because the district court determined that Thurston could not establish a constitutional violation, it granted summary judgment without reaching the second prong of the qualified immunity analysis. The court's finding that there was no Fourth Amendment violation as a matter of law also obviated the need to address whether the City of North Las Vegas could be subject to municipal liability under *Monell v. Department of Social Service*, 436 U.S. 658 (1978).

We review de novo a district court's decision to grant summary judgment on the basis of qualified immunity. *Crow v. Cnty. of San Diego*, 608 F.3d 406, 427 (9th Cir. 2010). In doing so, this court must determine whether (1) taken in the light most favorable to Thurston, the facts alleged show that the officers violated a constitutional right; and if so, (2) whether the right was clearly established at the time of the shootings. *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir.

2

2006). We find that genuine issues of material fact exist, and thus reverse and remand the case for trial.

**1.** The district court improperly ruled that the SWAT team officers acted reasonably as a matter of law in shooting Thurston's pet pit bull and mastiff. The shooting of a dog during a search warrant service must be reasonable under the circumstances to comply with the Fourth Amendment. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). We must consider the totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officers' duties by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* (internal quotations and citations omitted). Viewing the facts in the light most favorable to Thurston, there are genuine issues of material fact as to whether the police officers acted reasonably.

First, the police waited 20 minutes after entering the home before firing on the dogs, even though Thurston and her daughter were zip-tied within a few minutes of the SWAT team's entrance and escorted out of the house shortly thereafter. At oral argument, the city's attorney contended that the house had not yet been secured at the time of the shooting, but produced no citation to the record

3

for this assertion. The absence of evidence that the house was still unsecured at the time of the shooting raises a reasonable inference that the officers had enough time to observe the dogs' behavior and summon animal control specialists before the alleged attack occurred, which speaks directly to the reasonableness of the officers' conduct.

Second, there is a genuine issue of fact as to whether the dogs attacked. The district court relied on the lack of evidence directly contradicting the officers' testimony that the dogs attacked. But this ignores the summary judgment standard that requires the court to view the evidence in the light most favorable to Thurston and draw all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, although Thurston did not witness the alleged attack herself, she did testify that her dogs were not aggressive and that she had observed her dogs sitting by the back patio door looking happy and "wiggling their tails" just prior to her being escorted out of the house. Viewing the evidence in Thurston's favor, a jury could infer that if her dogs were "wiggling their tails" non-aggressively right before the alleged attack, then perhaps they did not attack at all.

Third, one of the police officers testified that department policy dictates attendance, if not participation, of an animal control officer whenever police know there are dogs present inside a home. The absence of an animal control officer—in

4

contravention of general policy and despite time to summon one after entry—further raises a genuine issue of fact as to the reasonableness of the officers' actions.

The dissent points out that "the dogs appeared to be safely confined to the fenced-in backyard," and that Thurston presented no evidence suggesting the officers knew or should have known that the dogs could get in the house. But Thurston testified that when the police initially entered the house, both dogs were in the bedroom with her and subsequently went out to the patio area. That the dogs were initially inside the house and then went outside undercuts the assumption that the dogs were "safely confined to the fenced-in backyard." If the dogs could freely leave the house, then a jury could reasonably infer that the dogs could just as easily re-enter the house.

**2.** Given that there are genuine issues of material fact as to whether the officers acted reasonably, we address whether Thurston's Fourth Amendment right was clearly established at the time of the shooting. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). We conclude it was. As this court ruled in *Hells Angels*, a reasonable officer "should have known that to create a plan to enter the perimeter of a person's property, knowing all the while about the presence of dogs on the property, without considering a method of subduing the dogs besides killing

5

them, would violate the Fourth Amendment." *Hells Angels*, 402 F.3d at 978. Thus, Thurston's constitutional right was clearly established at the time of the shooting and the officers are not entitled to qualified immunity.

**3.** Although Thurston's constitutional claims against certain individual officers may proceed to trial, the claims against the city must be dismissed. There is no evidence that the officers shot Thurston's dogs pursuant to a formal governmental policy or longstanding practice which constitutes the standard operating procedure of the city. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Accordingly, there can be no municipal liability against the city, and Thurston's *Monell* claim is dismissed.

**REVERSED and REMANDED.**

In Case No. 12-15729, Plaintiff-Appellant shall recover her costs on appeal..

*Thurston v. City of North Las Vegas*, No. 12-15729

WATFORD, Circuit Judge, dissenting:

This is not a case where the officers knew aggressive dogs were on the property a week before executing a low-risk search warrant, and then planned on killing the dogs as part of the search. *See San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 976–77 (9th Cir. 2005). In *Hells Angels*, the officers knowingly executed a backyard-entry plan that made a confrontation with the dogs inevitable, and did so with the intention of shooting the dogs. *Id*. at 968–69, 976–77.

The officers in this case, in contrast, were executing a high-risk search warrant issued earlier that day. They entered through the house, not the backyard. Once inside the house, the officers knew there were large, potentially aggressive dogs on the property, but the dogs appeared to be safely confined to the fenced-in backyard. The officers who shot Ms. Thurston's dogs were standing inside the house, guarding a door leading from the house to the backyard, when the dogs unexpectedly flung the door open with their noses. The officers testified without contradiction that the dogs—a 140-pound mastiff and a 70-pound pit bull—growled, bared their teeth, and charged at them inside the house, causing the officers to fear for their safety.

On these facts, a rational jury could find that the officers acted unreasonably only if Ms. Thurston presented evidence suggesting the officers knew or should have known that the dogs could get in the house, but nonetheless took no steps to prevent that from happening.  Because Ms. Thurston presented no such evidence, I would affirm.