**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIEL GARZA, an individual, | No.    19-55952 |
| Plaintiff-Appellant, | D.C. No.<br>2:16-cv-03579-SVW-AFM |
| v. | |
| CITY OF LOS ANGELES, | MEMORANDUM\* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted November 19, 2020
Pasadena, California

Before:  LINN,\*\* RAWLINSON, and FORREST\*\*\*, Circuit Judges.
Dissent by Judge RAWLINSON

Off-duty Los Angeles Police Officer Mario Cardona assaulted Plaintiff-

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

\*\*\*       Formerly known as Danielle J. Hunsaker.

Appellant Daniel Garza, who was dating Cardona's stepdaughter. After a jury returned a $210,000 verdict against Cardona, Garza went to trial against Defendant-Appellee City of Los Angeles under a ratification theory of *Monell* liability.[1] He argued that the City ratified Cardona's unconstitutional actions by promoting him shortly after the jury verdict against Cardona in the first trial. The jury in the second trial found the City not liable, and Garza appeals. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

*Evidentiary rulings.* Garza argues it was error to exclude an Internal Affairs' investigation report (IA report) exonerating Cardona issued before the first trial, a letter sent to Garza summarizing the IA report, and portions of Police Chief Charlie Beck's deposition testimony. We find no abuse of discretion because the district court's decision was not "beyond the pale of reasonable justification under the circumstances." *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016). As stated, Garza's **sole** ratification theory in his second trial and this appeal is that the City ratified Cardona's illegal conduct *by promoting him* after the jury's unfavorable verdict in the first trial, not by exonerating Cardona following an internal affairs investigation. Garza sought to introduce the IA report and summarizing letter as evidence of what Chief Beck knew when Cardona was promoted. After Chief Beck testified that he did not review the IA report, introducing

---

[1]*See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)

its contents and the summarizing letter into evidence would not have helped the jury assess whether Chief Beck reviewed those documents before signing off on Cardona's promotion—the only probative purpose consistent with Garza's ratification theory. The district court allowed Chief Beck to be questioned about the IA report so the jury could assess his credibility regarding his knowledge of it. Under these circumstances, far from being "quintessential ratification evidence," as the dissent argues, these documents were not themselves probative of the issue presented by Garza.[2] For this reason, exclusion of the IA report and summarizing letter also was not prejudicial. *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (explaining evidentiary rulings are reversed only when "the exercise of discretion is both erroneous and prejudicial").

Nor did the district court abuse its discretion in excluding Chief Beck's deposition testimony. Chief Beck's testimony at trial and at his deposition were not contradictory. Rather, his trial testimony expanded upon his deposition testimony. It was not an abuse of discretion to exclude deposition testimony that offered little, if

---

[2]To the extent the dissent argues that *Monell* ratification occurs anytime a letter summarizing an internal affairs report exonerating an officer is mailed on official letterhead—even if the *Monell* policymaker *never reviewed* said letter or the underlying report—and the investigated officer is later found guilty of the previously-exonerated conduct, such a proposition contradicts well-established caselaw. *See, e.g.*, *Gillette v. Delmore*, 979 F.2d 1342, 1347–49 (9th Cir. 1992) (per curiam) (explaining *Monell* ratification requires the policymaker to make a "conscious, deliberate choice"). Still, this is beside the point, given Garza's sole ratification-by-promotion theory.

any, impeachment value. *See United States v. Parker*, 991 F.2d 1493, 1497 (9th Cir. 1993) ("When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness." (citation omitted)).

*Judicial estoppel.* Garza argues that the City took contradictory positions in the first trial against Cardona and the second trial against the City. *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1044–45 (9th Cir. 2016) (citation omitted) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."). Again, we find no error. The City's position in the first trial—that Cardona acted with actual malice—is not inconsistent with the City's position in the second trial—that Cardona's promotion was dictated by the City's civil-service rules and was not a "conscious, deliberate" ratification of his actions by the City. *Gillette*, 979 F.2d at 1347. Thus, while it does appear that the police department played "fast and loose" with the facts in its IA report, the City did not take contradictory litigation positions before the district court. *See Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 601 (9th Cir. 1996) (citation omitted).

*Imputed knowledge.* Garza argues the district court abused its discretion in

refusing to formulate a jury instruction that addressed "principles of agency and constructive/imputed knowledge," yet he concedes the jury instructions accurately presented his theory of the case. *See United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997). Because ratification under *Monell* requires a "conscious, affirmative choice" by a policymaker, *Gillette*, 979 F.2d at 1347, the district court did not abuse its discretion in declining to give Garza's requested instruction.

***Judgment as a matter of law.*** Finally, Garza's conclusory argument for setting aside the jury's verdict fails because there is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (citation omitted). Namely, Chief Beck's testimony that he understood California law to prohibit him from reopening the investigation into Cardona following the jury's verdict in the first trial and, accordingly, to stall Cardona's promotion, directly contradicts Garza's ratification theory and is consistent with the jury's verdict.

The dissent focuses heavily on whether in fact California's "Public Safety Officers' Bill of Rights Act ["the Act"] negated Chief Beck's ability as the final policymaker to deny Cardona's promotion." Dissent at 4. Whether Chief Beck lacked the authority to prevent Cardona's promotion was discussed at length in Chief Beck's trial testimony and in the parties' arguments to the jury. Specifically, the City argued that Chief Beck could not withhold Cardona's promotion under governing

5

law, including applicable civil service regulations, and thus promoting him was not a ratification of his conduct. Garza disputed this claim, arguing that Chief Beck could have stopped Cardona's promotion because the Act's tolling provision would have allowed Chief Beck to reopen the earlier internal affairs investigation. Contrary to the dissent's assertion, it was not error for the district court to allow the City to present its interpretation of the Act—as evidence that Chief Beck *did not* ratify Cardona's actions by promoting him—just as it was not error for the district court to allow Garza to present his tolling interpretation of the Act—as evidence that Chief Beck *did* ratify Cardona's actions by promoting him.[3] *See* Dissent at 5. The jury was presented with both parties' positions concerning whether Chief Beck made a "conscious, affirmative choice" to ratify Cardona's actions—as *Monell* requires. *Gillette*, 979 F.3d at 1347. This was not error.

* * *

Although Garza's legal arguments fail, we share his frustration with the City and its police department's opportunistic flip-flopping from exonerating Cardona

---

[3]To be clear, neither party's interpretation of the civil service promotion statute, or the effect of its tolling provision, was deemed correct by the district court. Instead, the jury heard the parties' debate regarding whether Chief Beck could have stopped Cardona's promotion, and each side argued that the statute supported its conclusion. At the end of the day, for purposes of resolving the issues presented on appeal, it matters not which interpretation was correct—the contrasting interpretations were relevant only as evidence of whether Chief Beck deliberately and consciously ratified Cardona's unconstitutional acts in approving his promotion.

internally in its IA report to denouncing him publicly in a trial seeking monetary accountability. A group of citizens duly empaneled to serve as jurors, however, heard the evidence on this issue, assessed the City's conduct, and declined to hold it liable. Whereas Garza failed to show error by the district court, we will not disturb the jury's judgment.

**AFFIRMED.**[4]

---

[4]The parties' motions to take judicial notice (Dkt. Nos. 30, 53) are denied as moot.



***Garza v. City of Los Angeles,*** **No. 19-55952**
**Rawlinson, Circuit Judge, dissenting:**

The majority expresses its disapproval of the police department's

"opportunistic flipping from exonerating [Police Officer] Cardona in its [Internal

Affairs] report to denouncing him publicly in a trial seeking monetary

accountability." The majority nevertheless upholds the judgment in favor of the

Los Angeles Police Department because a jury "assessed the City's conduct and

declined to hold it liable." But because the district court excluded crucial relevant

evidence revealing the City's duplicity, the jury's assessment was not fully

informed. I respectfully dissent.

It is undisputed that the Internal Affairs Division of the City's Police

Department exonerated Cardona of any wrongdoing. Importantly, Plaintiff Daniel

Garza (Garza) was informed in a letter that an investigation was conducted

"through several levels of review" at the Los Angeles Police Department, including

Captain McManus, the Acting Commanding Officer of the Metropolitan Division

"and the command staff of Internal Affairs." Following this review, the Los

Angeles Police Department stated in the letter to Garza that Cardona's actions were

"justified, lawful and proper." This statement alone was sufficient to establish

ratification by the City of Los Angeles for the purpose of liability under *Monell v.*

1

*Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). The letter contained the seal of the Los Angeles Police Department and was written on Police Department letterhead with Los Angeles Mayor Eric Garcetti and Police Chief Charlie Beck listed as the senders of the letter. Finally, the letter contained Chief Beck's signature block. This collective imprimatur from the City adequately established that the City ratified the actions taken by Cardona. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (explaining that ratification occurs when "authorized policymakers approve a subordinate's decision and the basis for it") (citations omitted).[1]

But the story doesn't end there. In Garza's civil action against Cardona, the City did a complete about face, arguing that Cardona's use of excessive force against Garza was malicious, rather than "justified, lawful, and proper," as determined by the Police Department's Internal Affairs Division. This tactic was successful for the City, resulting in a jury verdict against Cardona, but no *Monell* liability for the City. Shortly after the trial and adverse verdict against Cardona, the City promoted Cardona to the rank of sergeant. This promotion prompted Garza to request a new trial on the City's *Monell* liability, and the district court granted the request.

---

[1]The district court should have granted judgment in favor of Garza at this point.

At the new trial of the City's *Monell* liability, the district court inexplicably excluded from evidence the Internal Affairs Report exonerating Cardona. As previously discussed, this report was quintessential ratification evidence. *See id.*[2] The district court abused its discretion in excluding this critically relevant evidence. *See Obrey v. Johnson*, 400 F.3d 691, 701-02 (9th Cir. 2005) (concluding that the district court's exclusion of directly probative evidence required reversal). But even without the evidence of the Internal Affairs exoneration, Chief Beck's promotion of Cardona in the face of his knowledge that Cardona had been found liable for the use of excessive force also constituted ratification of Cardona's actions by the City.

As a preliminary matter, the district court committed no error in finding that

---

[2]The majority makes much of the fact that Chief Beck denied reading the Internal Affairs Report. However, Chief Beck could not deny that the City of Los Angeles sent a letter to Garza over the signature line of both the mayor and Chief Beck endorsing the exoneration of Cardone by the Los Angeles Police Department Internal Affairs Division. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008) (reiterating that ratifying a constitutional deprivation "suffice[d] for official liability"). The summarizing letter and Internal Affairs Report were direct evidence of *Monell* liability and were improperly excluded. *See Obrey v. Johnson*, 400 F.3d 691, 701-02 (9th Cir. 2005) (reversing exclusion of directly probative evidence). And Chief Beck never denied reading the letter. Under the majority's view, a policymaker may avoid *Monell* exposure by simply denying knowledge of the contents of a document prepared pursuant to his policies. That is simply not the law. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (explaining that ratification occurs when "policymakers approve a subordinate's decision").

Chief Beck was a policymaker. *See Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1108 (9th Cir. 2018) (concluding *de novo* that the City Manager was the policymaker). To determine whether a public official is a policymaker, we consult state law. *See Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). The California Supreme Court has declared that the Police Chief for the City of Los Angeles Police Department is "[t]he appointing authority for the [Police] Department." *Riveros v. City of Los Angeles*, 41 Cal. App. 4th 1342, 1350, *as modified on denial of rehearing* (1996), thereby making him the policymaker for the Department. *See Lytle*, 382 F.3d at 983 (defining a policymaker as someone "in a position of authority such that a final decision by that person may appropriately be attributable" to the government agency). It is indisputable that a final decision by the Chief of the Los Angeles Police Department "may appropriately be attributable" to that Police Department. *Id.*; *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008) (confirming that a decision by the Chief of the Los Angeles Police Department to ratify a constitutional deprivation "suffice[d] for official liability").

The City argued that a provision of the Public Safety Officers' Bill of Rights Act negated Chief Beck's ability as the policymaker to deny Cardona's promotion. The City specifically relied on California Government Code § 3304(d)(1), which

4

provides that no promotion may be denied unless an investigation of the incident used as the basis for denial of the promotion is completed "within one year of the public agency's discovery" of the incident. However, as the City conceded, the statute expressly tolls the one-year period of investigation "while [a] civil action is pending" in a case "where the public safety officer is named as a party defendant." California Government Code § 3304(2)(F).

The district court ignored § 3304(2)(F), and erred in allowing the City to present this argument to the jury based on its self-serving and misleading interpretation of California Government Code § 3304 to avoid *Monell* liability. Indeed, at oral argument before us, counsel for the City was unable to satisfactorily answer the question of what would have happened if Chief Beck had not signed the promotion order. In my view, the inability to address that question strongly supports an inference that Chief Beck actually had the authority to deny the promotion as the appointing authority.[3] The parties then could have possibly litigated whether or not the denial violated the Public Safety Officers' Bill of Rights. But it was error for the district court to allow the City to introduce its interpretation of the statute as negating Chief Beck's ratification of Cardona's use

[3]In his deposition, Chief Beck acknowledged that he could have reopened the investigation into Cardona's misconduct. But the district court excluded this testimony together with the letter to Garza and the Internal Affairs Report.

5

of excessive force without permitting Garza to introduce evidence that would establish Chief Beck's ratification. *See Harper*, 533 F.3d at 1026 (upholding *Monell* liability when the Los Angeles Chief of Police "approved of the Task Force's [unconstitutional] tactics").

Because the district court committed several critical evidentiary errors in this case,[4] I would reverse the judgment in favor of the City and direct entry of judgment in favor of Garza on his *Monell* claim.

---

[4]The majority states that the jury heard the evidence and ruled against Garza. But because of the district court's erroneous evidentiary rulings, the jury did not hear ALL the evidence.